McCROAN, Trustee, et als. *vs.* POPE et als.

1. A bequest, by which property is given to a trustee, on the trust, that he shall employ it in such manner as may be most beneficial to M. M., a married woman, and annually pay over to her the net profits thereof for the sole and separate use and maintenance of her and her children, during her natural life, and that at her death the property shall be equally divided among such of her children as may be then living, vests the entire life estate in M. M. alone. The words, for the sole and separate use and maintenance of her and her children, do not manifest an intention to limit the quantity of the legacy, but merely show the motive of the bequest.

2. A *feme covert* has the same control over her separate estate as she would have if she were sole, and may by deed convey such interest as she herself possesses.

Error to the Chancery Court of Benton. Tried before the Hon. Wilie W. Mason.

THE facts of this case are as follows: In 1833, Rhesa Bostick, a citizen of Burke county, in the State of Georgia, by his last will and testament devised and bequeathed to George S. Morris certain lands in said county and State, together with a number of slaves, on the special trust, "that he, the said George S. Morris, his heirs, executors or administrators, do and shall use and employ the said land and negroes in agriculture, or in such other way and manner as may be most beneficial to the interest of the said Mary Morris, his wife, and that the said George S. Morris, trustee as aforesaid, do and shall pay and hand over to his said wife Mary, annually and every year, the net proceeds of the said estate, real and personal, for the sole and separate use and maintenance of her, the said Mary, and her children, free from the control of her said husband, the said George S. Morris, during her natural life, and after the death of the said Mary Morris, then upon this further trust and confidence, that is to say, the said George S. Morris, trustee as aforesaid, his executors and administrators, do and shall immediately and by proper and legal conveyances transfer, assign and set over to such child or children of the said Mary Morris as she may have by her present or any future husband, that may be in life at the

time of her death, all the said lands and negroes and the increase thereof and all the other property appertaining to said trust, the said property to be divided into as many parts or shares as there are children, and one part or share thereof to be allotted and conveyed to each child," &c.

The trustee having come into possession of the property, removed the slaves to this State, and in the year 1840, by deed of trust, executed by himself and his said wife, conveyed them to Henry L. Martin, to secure the payment of a debt due by said trustee to the Branch of the Bank of the State of Alabama at Montgomery, under which they were sold and purchased by several persons, who are made parties to the bill. George S. Morris, the husband and trustee of the said Mary Morris, afterwards died insolvent, and Eli McCroan having been appointed trustee in his stead. filed this bill, in which Mrs. Morris and her infant children joined as co-complainants, against the said Henry L. Martin and the purchasers of the slaves at said trust sale, for the recovery of the slaves and an account, &c.

The purchasers answered the bill, and insist by way of plea and demurrer that there is a perfect remedy at law, and that they are *bona fide* purchasers without notice.

The chancellor dismissed the bill at the final hearing on the specific grounds of defence set up by the defendants, and his decree is now assigned as error.

RICE & WHITE, for the plaintiffs in error:

1. One of the inseparable incidents of the *ownership of property* is that it shall be liable for the debts of the owner, and that a restraint upon its alienation is void. An exception obtains in the case of a separate estate of a married woman, which may be so secured that the wife herself has not the power to alienate it. Cook v. Kennerly, 12 Ala. 48 ; Tullett v. Armstrong, 1 Beav. 3.

2. Whenever " the right to use and possess the property" is not guarantied for any specified period, but only " a mere right to the *profits* (" proceeds" every year) arising from the employment of the thing conveyed," the *cestui que trust* being a *feme covert*, cannot sell her interest.—12 Ala. Rep. 51.

3. The terms employed in the will of Bostick amount to a clear restraint upon the alienation of the property by Mary Morris or her husband during her life. The *annual profits* of the

property are by the will devoted to the maintenance of the mother "and her children" *every year* during her life. This fund for maintenance is intended by the testator to be annual and continuing. A sale by Mary Morris or her husband would defeat this trust, and a court of equity will hold all such acts to be utterly void.

4. Under a will like this, even if there was no restraint upon the power of alienation, a court of chancery would not direct the sale "out and out" of Mary Morris' interest, even for her own debt. *A fortiori*, this court cannot sustain a sale, not merely of her interest, but of the whole property, for her husband's debt, and when a sale of any interest of hers will defeat the trusts of the will, and when there is a restraint upon her power of alienation contained in the will.—Coutts v. Walker, 2 Leigh 268.

5. A married woman cannot dispose of her separate estate as she pleases, if " the mode of enjoyment is prescribed in the creation of the estate, or her powers over it restricted."—Puryear v. Beard, 14 Ala. 134.

In 12 Ala. Rep. 51, the cases of Fellows v. Tann, and of Spear v. Walkley, are re-affirmed. Jasper v. Howard, 12 Ala., also re-affirms the same doctrine, to-wit, that a will like this gives to the mother and children collective interests, which cannot be defeated in any forum.—Fellows v. Tann, 9 Ala. Rep.; Anderson v. Hooks, 11 ib. 953.

MORGAN, A. J. WALKER, and J. B. MARTIN, for the defendants :

1. The intention of a testator, when it can be ascertained, will always be carried into effect by courts of justice. In this case, it is manifest from the language of his will, that Bostick intended to give a separate, distinct and entire interest in the property mentioned to Mary Morris, during her life. The connection in which the children are mentioned with Mary Morris and the property bequeathed shows it to have been a mere expectation that the children should be maintained out of the proceeds of the property given the mother. The language not being imperative or commanding to Mrs. Morris, no present interest was vested in or trust created in favor of the children.—2 Story's Eq. Jurisp. §§ 1068-9 ; Malim v. Keightley, 2 Ves. 335;

Knight v. Knight, 3 Bev. 148; Bardswell v. Bardswell, 9 Sim. 320; Sale v. Moore, 1 Sim. 534; Pope v. Pope, 10 Sim. 5; Ellis et al. v. Ellis, adm'r, 15 Ala. 296.

2. Mrs. Morris has the same right in equity to convey her separate estate, as though she were a *feme sole*, and by her deed in trust to Henry L. Martin, has deprived herself of all interest in and of all right to litigate about the trust property. Besides, after having joined with her husband in making the deed of trust, her husband was authorised to represent both her and himself in substituting a trustee. The making of the deed of trust was an appropriation of the trust property to the purpose of indemnifying her husband's securities, and she has no further control over it.—1 Fonbl. Eq. 102, note; Hoot et al v. Sorrell et al., 11 Ala. 386.

DARGAN, C. J.—The first question that presents itself for our consideration is, what estate or interest did Mrs. Morris take under the will? I think it very clear that she took a life estate in the whole, with a remainder over, after her death, to such of her children as should survive her. By the will, the legal title is vested in George S. Morris, her husband, as trustee, and the land and negroes are to be employed by him in agriculture, or in such other way or manner as may be most beneficial to Mary Morris, his wife; he is to pay and hand over to her annually and every year the nett proceeds of the estate, for the sole and separate use and maintenance of his wife, Mary Morris, and her children, and after her death the whole is to be equally divided between such children as should survive her, either by her present or any future husband. I do not think the testator intended to give to the children of Mrs. Morris any immediate or joint interest with their mother, during her life, but intended to give to the mother a life estate in the whole, and the remainder over after her death to such of her children as should survive her. In the case of Jeffry v. Honeywood, 4 Maddox, 398, the devise was to Mary Jeffry, the daughter of the testator, and to all and every child, or children of her body lawfully issuing, and to his or her heirs forever, as tenants in common and not as joint tenants. Mary Jeffry died in the life-time of the testator, leaving ten children. The question was whether the testator intended his daughter to take one-eleventh

jointly with her children; if so, her share had lapsed; or did he intend to give Mary Jeffry the whole for life, with a remainder over after her death to her children, as tenants in common? The vice-chancellor held that a life estate in the whole was given to the daughter, and the remainder over in fee to her children. In the case of Wood v. Baron, 1 East 259, a testator devised to his daughter his whole estate and effects, real and personal, to hold and enjoy the same, as a place of inheritance to her and her children, or issue forever, and if his daughter should die, leaving no children, or if her children should die without issue, then over. It was held, that the daughter took an estate tail, with remainder over, although she had children at the date of the will and at the time of the testator's death. In Morse v. Morse, 2 Sim. 485, a testator gave to his daughter, and to her children, £5,000—£3,000 to be paid in one year after his death, and £2000 after the decease of his wife, and appointed trustees of these sums for his daughter and her children. It was decided that the daughter took an estate for life, with remainder over to her children, whether born before or after the death of the testator. In the case of Vaughan v. The Marquis of Headfort, 10 Simons, 639, the testator bequeathed to the Marquis of Headfort and his children £40,000 to be secured for their benefit. It was decided that the words, to be secured for their benefit, showed that the intention of the testator was that the Marquis took a life estate in the whole, with remainder over to his children. It is, however, frequently a question of difficulty, when a devise is to one and his children, to determine whether the children were intended to take jointly with their parent, or whether they were intended to take a remainder after the life estate of the parent determined. The general rule is, that if a devise be to one and his children, and he have children at the date of the will and the death of the testator, the parent and children, living at the testator's death, take jointly under the will.—Wild's Case, 3 Coke's Rep. part 6, p. 17—see the cases collected in the 2d vol. of Jarman on Wills, pages 307-316; see, also, Parkman v. Bowdoin, 1 Sumner, 359; 15 Pickering, 104. The intention, however, of the testator is to govern in each case, and when that is ascertained, the law is ascertained; for every testator is a law-giver to the court, so far as his intentions are consistent with the laws of the land.

Each case must therefore depend in a great measure on its own peculiar circumstances, for the inquiry is, what did this testator intend? Here, by the words of the will, the property was devised to the husband of Mrs. Morris, to be employed in agriculture by him, or in any other manner most beneficial to his wife, Mary Morris, and that he should hand over to her the nett proceeds, for the sole and separate use and maintenance of Mary Morris and her children, and, after her death, the whole to be equally divided between such of her children as should be living at her death. It is very clear that the children did not take an indefeasible estate, before the death of their mother; if they died in her life-time, their representatives could take nothing, for the property was not to be divided until after her death, and then only amongst those who survived her. The gift was to the husband, as trustee, the annual nett proceeds to be paid to the wife for the support of herself and her children. The true intention is, that the wife should have a life estate in the whole, and the children should only take the remainder at her death. The words, for the support and maintenance of herself and her children, only show the reason or motive of the testator why he made the bequest, but cannot, in my opinion, reduce the share or interest of the wife, to an equal share or proportion with all her children. The gift to Mrs. Morris was complete without these words, and they do not show an intention to reduce the quantity of the legacy to her—but only the motive of the bequest.

As Mrs. Morris takes a life estate under the will, with a remainder over to her children, and as she joined with her husband in the mortgage, her interest is bound, for, although a *feme covert*, she had the same control over her separate estate as if she had been sole. She therefore conveyed her interest and the sale gave the purchasers such title as she had, which was an estate for her own life, with remainder to her children.

This view is decisive of the cause, and shows that the decree must be affirmed. The children, however, may proceed by another bill to protect their interest, after the death of their mother.

Let the decree be affirmed.

CHILTON, J., not sitting.