Mary E. Johnson, executrix & trustee, vs. Mary E. Johnson, individually, & others.

Worcester.    March 3, 1913. — June 18, 1913.

Present: Rugg, C. J., Morton, Hammond, Sheldon, & De Courcy, JJ.

*Devise and Legacy. Trust.*

A testator by his will left the residue of his estate to trustees to hold and keep it safely invested and to pay over the income as it should be received to the testator's wife "for the support and maintenance of herself, and the care, maintenance, and education of our children, during her life, or until she shall marry again." The will then directed that, if the income of the estate should at any time prove inadequate for such support, maintenance and education, the trustees should devote so much of the principal sum as might "be found necessary for that purpose," that the testator's wife "be allowed to be the sole judge in that respect, and that for the purposes aforesaid she use said principal as freely and unrestrictedly as if the same had been absolutely given to her." The will contained minute and complete directions for the disposition of the principal of the trust fund upon the various possible contingencies in the future, and provided what disposition should be made of the principal and income in case of the widow's marriage, but contained no further provision as to the disposition of the income received by the widow. *Held*, that the income was received by the testator's widow subject to a trust for the reasonable support of herself and her children until her death or marriage, and that so much of the income received by the widow as was not needed for the reasonable support of herself and her children was held by her as her own property free from trust.

Bill in equity, filed in the Probate Court for the county of Worcester on August 12, 1910, by the executrix of and the trustee under the will of Iver Johnson, the late husband of the petitioner, for instructions as to the disposition and distribution of the income of the residue of the estate of the testator.

On appeal the case was submitted upon the pleadings and an agreed statement of facts to *Morton*, J., who reserved it for determination by the full court.

The will of Iver Johnson was dated March 24, 1877. In it the petitioner and Nahum M. D. Hayward of Worcester were named as executors. By a codicil dated July 19, 1895, the appointment of Nahum M. D. Hayward as executor was revoked and the petitioner was nominated as sole executrix. There was a recital that the sole purpose of the testator in executing the codicil was

to revoke the appointment of Hayward as executor. Iver Johnson died on August 3, 1895, and the will and codicil were proved on September 3, 1895.

The first article of the will directed the payment of the testator's debts and funeral expenses and of expenses incurred in carrying out the provisions of the will. The second and third articles of the will were as follows:

"Second. All my household furniture, wearing apparel, plate, linen, china, ornaments of the person, books, pictures, house adornments, and whatsoever other movable chattels of a like description may be in or about the house and premises in which I may be residing at the time of my decease, I give, and bequeath unto my dear wife, Mary Elizabeth Johnson, for her own sole use and benefit. To have and to hold the same to her, the said Mary Elizabeth Johnson, and her executors, administrators and assigns, to her and their use forever.

"Third. And as to all the rest, residue and remainder of my estate, real, personal or mixed, of which I may die seized and possessed, or to which I may in any way be entitled at the time of my decease, whatever the same may be, wherever it may be or be situated, or however it may be known, designated or described, including all remainders and reversions, I give, devise and bequeath the same unto my executors hereinafter named.

"To have and to hold the same to them and their heirs, executors, administrators and assigns.

"In trust, however, for the uses and purposes following, and none other, that is to say:

"1. The same to hold, manage, invest and reinvest from time to time in safe and profitable securities, but always in such way and manner as to ensure absolute safety to the principal so far as the same can possibly be done.

"2. The income thereof, as it shall become due and payable, and be received by them to pay over to my said wife, Mary Elizabeth Johnson, for the support and maintenance of herself, and the care, maintenance, and education of our children, during her life, or until she shall marry again.

"3. If the income of said estate shall at any time, from any cause, prove inadequate for such support, maintenance and education then to devote so much of the principal sum as may be found

necessary for that purpose; and I direct that my said wife, Mary Elizabeth Johnson, be allowed to be the sole judge in that respect, and that for the purposes aforesaid she use said principal as freely and unrestrictedly as if the same had been absolutely given to her.

"4. At the decease of my said wife, Mary Elizabeth Johnson, if she shall not have married again, to pay over and distribute what may remain of said fund to and among all my children who may then be living, in even and equal proportions, the child or children of any deceased child to take by right of representation.

"5. If my said wife Mary Elizabeth, shall again marry then at the time of such marriage, to pay over and distribute two-thirds part of whatever amount of said fund may then remain unexpended to and among all my children who may then be living, equally, the child or children of any deceased child to take by right of representation; and the remaining third part to continue to hold, and to pay over the income thereof as it becomes due and payable and is received by them to my said wife, Mary Elizabeth, during her life, and at her decease to pay over and distribute said third part of said principal to and among all my children in the manner aforesaid.

"6. If, at the time of the marriage of my said wife Mary Elizabeth, if she shall again marry, no child of mine shall be living, then to pay over to her in the manner aforesaid, the net income of all said principal fund during her life; and at her decease, to pay over and distribute said principal fund to and among my heirs at law, according to the laws of distribution of intestate estates, then in force in this Commonwealth.

"7. If, at the decease of my said wife, whether she shall marry again or not, no child of mine shall be living, then at her decease, to dispose of said principal fund in the manner provided in the last preceding section."

*H. H. Fuller*, for the plaintiff, stated the case.

*H. Parker & F. T. Field*, (*A. G. Buttrick* with them,) for Mary Elizabeth Johnson, individually, J. Lovell Johnson and Mary L. Johnson.

*S. L. Whipple*, (*D. I. Walsh & A. Lincoln* with him,) for Walter O. Johnson.

*A. Hemenway*, (*E. H. Abbot, Jr.*, with him,) for Fred I. Johnson.

*T. H. Gage,* guardian *ad litem,* submitted a brief.

HAMMOND, J. By the third article of the will of Iver Johnson, the residue of his estate was devised and bequeathed to trustees to hold and keep the same safely invested and to pay over the income as it shall be received by them to his wife "for the support and maintenance of herself, and the care, maintenance, and education of our children, during her life, or until she shall marry again." By agreement of parties the case is reserved by a single justice, upon an agreed statement of facts, for the consideration of the full court "solely for the interpretation of those provisions of the will which relate to the disposition of such income." Questions as to the actual amount of the income as distinguished from capital are not here reserved.

The clause above quoted was written by a "skilled attorney at law of wide experience in preparing and drafting wills," is brief, simple and direct in form, and upon its face would seem to be easily understood; and yet in view of the decided cases the parties concerned do not agree as to its meaning; and its interpretation is attended with some difficulty.

The widow contends (1) that she receives the income absolutely as her own property, free from any trust in favor of the children or liability to them; or (2) in the alternative, that the trust, if any, in favor of the children extends only to such an amount as may be necessary for their proper care, maintenance and education, and that any excess above that amount belongs absolutely to her. Two of the children, namely, J. Lovell and Mary, seem to agree with the widow in her views. Walter, one of the sons, contends that the whole income was impressed with a trust in favor of the widow and children, to last during the term of the trust; that the widow has full and absolute discretion as to how much should be expended for her own support and for the care, maintenance and education of each of her children; that any part of the income temporarily in her hands and not needed for the time being for such expenditures still remains charged with the trust, and that no part of the income goes to the widow as her own property or can be appropriated by her as such, and that, at the termination of the trust, "any unexpended income should then be distributed as a part of the trust fund, or, at least, according to the same method." Fred, the eldest son, contends that the widow receives the income upon

trust for herself and the children, equally to be divided between them, that is, one fifth to each. The guardian *ad litem* contends that the widow takes the income charged with a trust, to secure each of the beneficiaries, the widow and children, a maintenance, that the amount to which one of the beneficiaries is entitled may be more or less than that to which another is entitled, depending upon circumstances reviewable by the court; that the whole annual income need not be expended each year; that the exigencies of one period may require contraction at another; and that unappropriated income will ultimately follow the principal.

The questions raised by these various contentions may be briefly stated thus: 1. Does the widow receive the income absolutely as her own property, or in trust? 2. If in trust, what is the nature and extent of that trust?

1. As to the first question. In the construction of any clause of a will, the cardinal rule, as often has been said, is to ascertain the intention of the testator. And this is to be done by reference to the express language of the clause under consideration, to the other parts of the will, to the dominant purpose of the testator as shown by the whole will, to the circumstances under which the will was executed, including among other things the situation, pecuniary and in other respects, of those having as members of his family or otherwise a natural claim upon him for recognition or assistance, as well as the relations sustained by him to all the legatees; and to the decided cases so far as they tend to throw light.

The original will was executed on March 24, 1877. Although neither the age nor the occupation of the testator at that time is expressly stated in the agreed statement of facts, still it fairly may be inferred from the facts agreed, including the will itself, and the oral statements made at the argument, that at that time he was not beyond middle age and was in the "full vigor of health," that he was possessed of a comfortable household establishment, and that as an employer he was engaged in a manufacturing business of good promise, susbtantially the same as that which, as carried on and developed subsequently by him during his lifetime and by the executor since his death, has been very profitable. His family consisted of himself, his wife, then twenty-eight years of age, and two boys aged respectively about five and a half years,

and nine months. Whether he had any other immediate relatives does not appear. From the glimpses we get of him, he appears at that time to have been busily engaged in a profitable manufacturing business of some magnitude and promise, and to be very happy in his domestic relations, and to have been absorbed in these two things. He fairly may be assumed to have known the risks of a manufacturing business, the liability to loss as well as the chance of gain, and the business skill required to avoid the one and reach the other.

In full health, bodily and mental, this man thus situated concludes to make his will. He does not intend to make any bequests outside his immediate family. To his family alone, so far as any survive, is all to go. But in his mind there is a distinction between income and principal, and in a general way he desires that, if practicable, only the income of the bulk of his property shall be spent during the life or the widowhood of his wife, leaving the principal to stand well invested and to be distributed among his issue thereafterwards. He is somewhat solicitous about what shall be done with his manufacturing interests existing at his death. But he wants everything he leaves to be safely invested, and in view of the risks of continuing the business he thinks it best on the whole that his interests in that connection be closed up as soon as possible, without undue sacrifice. His idea is that for a while at least the family shall be kept together in the home in existence at the time of his death. And he knows not how soon the change, to meet the consequences of which he has resolved to make preparations, may come. In entering upon this work he does not rely upon himself, but he calls to his aid a skilled attorney of wide experience in drafting wills. They confer together, and the will is drawn. After making provision for the payment of all obligations the mind of the testator seems first to turn to the sanctuary of his home; and he gives all his household furniture and every movable article (naming them by classes in considerable detail) which may be in or about the house or premises in which he may be residing at the time of his decease, unto his "dear wife, . . . for her sole use and benefit." Having thus provided for the continuance of the home, in which he has lived with his family, so far as respects the familiar material things in or about it, he passes to the consideration of the rest and residue of his property. He intends to put it in trust. He

has decided to appoint his wife and Hayward, then in his employment to be the sole executors of his will, and he gives this residue to them in trust to keep the same safely invested, and to pay over the income to his wife for the support and maintenance of herself and the care, maintenance and education of his children during her life or until she shall marry again. And then it occurs to him that the income may prove inadequate for those purposes, and to meet this possible situation the trustees are to devote so much of the principal as may be found necessary for those purposes, and he desires that his wife shall be allowed to be the sole judge in respect to this use of any part of the principal, and that for those purposes she should use said principal as freely and unrestrictedly as if the same had been absolutely given to her.

After the death of his wife, "if she shall not have married again," the fund is to be distributed equally among his children then living, and the issue of any deceased child taking by right of representation. Should the wife remarry, then two thirds of the fund is to be distributed among the children and the issue of a deceased child in like manner, and the income of the third kept in trust shall be paid over to the wife during her life, and at her death this one third of the fund shall be distributed in like manner among the children. If at the time of the marriage of the wife no child of the testator be living, then the whole income of the fund shall be paid to her during her life, and at her death the principal shall be distributed among the testator's heirs at law. A similar disposition is made of the principal fund if at the decease of the wife, whether she has married or not, there be then no child living.

For the purpose of making the settlement of the estate as easy and expeditious as possible, the executors, or whoever may execute the will, are given large powers as to the sale of real estate. Finally, his wife and Hayward, then in his employment, are named to be executors without sureties on their bonds.

In general outline the plan disclosed and crystallized in the will is simple. It does not contemplate the use of one dollar of the principal for the support of his wife or children unless the income should prove inadequate, and even then only so far as his wife may think necessary. His purpose is that with that exception neither she nor any of the children shall touch the principal during the life of the wife unless she marry again. He is providing for the

future.   His wife is twenty-eight years of age.   There is nothing to show that she was not in sound health.   She might yet live for half a century longer, and in any event might reasonably be expected to live to threescore and ten, a period forty-two years after the will was executed.   He might reasonably anticipate that their union might be blessed with the birth of other children, and there is nothing to show that he was more solicitous for the support of his wife than for that of his children.   He was not providing for the support of a child of maturity whose conduct had shown that he could not be safely intrusted with money.   The character of each of his children, present or prospective, was still to be developed.   It fairly may be assumed that he expected on the one hand that in case of his death his children would be during their minority in the care of his wife, at least until she married again, and on the other hand that as they came respectively to maturity they would take their places as efficient members of society and make their own homes and become heads of families.   He evidently had confidence in the business ability of his wife and her maternal love for their children.   He made her one of the executors who were to act as trustees, and in case of the inadequacy of the income for the purposes of support she was to be the sole judge as to the amount of the principal required to make good the deficiency.

What did this man thus circumstanced, in the will thus framed under the advice of a skilful and experienced lawyer, mean when he provided that the income should be paid to this woman, his wife, "for the support and maintenance of herself, and the care, maintenance, and education of our children, during her life, or until she shall marry again"?   In the will itself there are plain indications that he by the aid of the attorney, knew how to use words apt to create an absolute gift free of trust.   Such is the gift to the wife of the household furniture and other articles about the home, for her sole use and benefit.   There can be no doubt as to the nature of this gift.   It is absolute and free from trust, and the intent that it shall be so is expressed in words that admit of no other interpretation.   And, what is more significant, the same characteristic is shown in other parts of the will with reference to this very matter of income.   By the fifth article it is provided that in case of the marriage of the widow, any child of the testator being then alive, the income from one third of the trust fund shall

be paid to her during her life; and by the sixth article, if upon her marriage there be no child then living, the income of the whole fund is to be paid to her during her life. There can be no doubt as to the meaning of these two clauses so far as respects the income payable to the wife. The gift is absolute and free of trust. In neither case is there any need of a provision for the children, in the first, because two thirds of the trust fund is distributed among them, and in the second, because by the hypothesis there are no children. In a word, there are in this will three separate clauses, one concerning the gift of household furniture and similar articles, and two concerning the income of this very fund, in each of which clauses it appears that where the testator intended that the children should have no interest in the gift he knew how to express that intention in apt, clear and unambiguous language.

The clause under consideration is in different language. There can be no doubt that until the marriage or death of the widow, whichever should first happen, in this clause and in this clause alone is there any provision out of the income for the children either during their minority or majority. No matter how large it may be, not a dollar of it is theirs by right except under this clause. And the testator knew this. Knowing this, instead of leaving it to his wife in words similar to those used by him in the other places of the will he provides that it shall be paid to her for her support and the support of her children. In his own mind there is an intimate connection between this income and the support of the children, and it is the only place in the will where he seems to have considered this relation. And the suggestion in his own mind seems to have been that until the death or marriage of the widow the children must look to this income, if anywhere, for care, maintenance or education. It is impossible to read this will without coming to the conclusion that he intended the children should have their support out of the income. That intention is clearly expressed. It is the intention naturally suggested by the circumstances under which the will was executed. And this intention was expressed not as an expression of confidence that its execution safely could be left to the wife, nor in words of recommendation, hope, entreaty or desire, but as a command, or in other words as his testamentary will.

Such would seem to be the irresistible conclusion upon a simple

reading of the will in the light of all the circumstances. But there is something more. The testator was domiciled in this State, and may be fairly assumed to rely upon the law of this Commonwealth for the rules to be applied in the interpretation of his testamentary words. What was the condition of the law of this Commonwealth at that time as indicated by the cases already then decided? The will was executed in 1877. In 1861, the case of *Chase* v. *Chase*, 2 Allen, 101, was decided, and was reported in the regular reports as early at least as 1862. In this case there was a trust fund, the income of which was to be paid to the testator's son every year during his natural life, "for the support of himself and his family and the education of his children," with remainder upon his decease to his issue. Bigelow, C. J., giving the opinion of the court, uses this language: "The intent of the testator to give the benefit of the income of the trust fund created by his will to the wife and children of his son Philip, as well as to his son, is clear and unequivocal. It was intended for their joint support, and for the education of the children. The only question arising on the construction of the will is, whether the income of the trust fund when received by the son is held absolutely by him to be disposed of at his discretion, or whether he takes it in trust, so that the wife and children can seek to enforce its due appropriation in part for their benefit in a court of equity. We cannot doubt that the latter is the true construction; otherwise it would be in the power of the son to defeat the purpose of the testator by depriving his family of the support and education which was expressly provided for by the will. . . . It can make no difference in the application of the principle, that the person who is to receive the income also takes a beneficial interest in it for his own support." In *Andrews* v. *Bank of Cape Ann*, 3 Allen, 313, the testator bequeathed property to his wife "for the maintenance and the bringing up and educating my children [G. and J.], as long as she remains my widow," and it was held that the wife held in trust. A similar result was reached in *Smith* v. *Smith*, 11 Allen, 423, where the bequest was to the wife "for her benefit and for the proper maintenance and education of my two daughters," and in *Loring* v. *Loring*, 100 Mass. 340, where the bequest was to the wife "for her benefit and support and the support of my son John O. Loring, whilst she remains unmarried." In this last case Hoar, J., speak-

ing for the court, said (p. 342): "To give property to one person, for the support of another, is certainly sufficient to show that a trust is intended in favor of the latter." *Loring* v. *Loring* was decided in 1868. See also *Whiting v. Whiting,* 4 Gray, 236; *Hyde* v. *Wason,* 131 Mass. 450; *Buffinton* v. *Maxam,* 140 Mass. 557, in which Morton, C. J., says: "Where personal property is bequeathed to one for the support of another, a trust is imposed upon the property, and the taker holds it in trust for the purpose named," and *Phelps* v. *Phelps,* 143 Mass. 570 (and cases therein cited), in which Gardner, J., quotes with approbation the rules stated by Hoar, J., in *Loring* v. *Loring,* 100 Mass. 340.

We are aware of the fact that the cases in other jurisdictions are in conflict with each other, and some do not give the same weight to words like those under consideration as this court does. See for example *McCroan* v. *Pope,* 17 Ala. 612; *Dee* v. *Dee,* 212 Ill. 338; *Seamonds* v. *Hodge,* 36 W. Va. 304; *Small* v. *Field,* 102 Mo. 104; *Whitridge* v. *Williams,* 71 Md. 105; *Crandall* v. *Hoysradt,* 1 Sandf. Ch. N. Y. 40. In many of the cases however the conflict is more apparent than real, since the circumstances of the cases are different; and the weight of authority seems to be with the general view taken by this court. We also give due consideration to the suggestion that the proposition, stated by Hoar, J., and reported in substance in two subsequent cases above mentioned, is not to be accepted as a rule necessarily overruling every other rule of interpretation. It is simply one rule of construction and as such is to have its legitimate effect under all the circumstances of the particular case.

It is unnecessary to pursue this branch of the case further. We do not think that the provision as to the disposition of the principal required to make up any deficiency of the income is of much bearing. For reasons above set forth we can have no doubt that this income is held by the wife not as her absolute property, but impressed with a trust for the support of herself and her children.

There is nothing in *Rich* v. *Rogers,* 14 Gray, 174, or *Johnson* v. *Bridgewater Iron Manuf. Co.* 14 Gray, 274, or *Pitts* v. *Milton,* 192 Mass. 88, relied upon by the widow, which is inconsistent with this result.

We have considered the case as if there had been no codicil.

The codicil, executed eighteen years after the will and about two weeks before the testator's death, simply revoked the appointment of Hayward as executor and ratified and confirmed the will in every other respect. Notwithstanding the increase in the number of children, and the gifts made by the testator to his wife shortly before his death, and other circumstances existing at that time as disclosed in the agreed statement of facts, we think that the meaning of the clause under consideration remained unchanged.

2. As to the nature and extent of the trust. The trust in substance was for the support of the widow and children until her marriage or death, whichever event should first occur, and within that time was to continue not only during the minority of the children but afterwards during their respective lives. At the time of the execution of the will there were only two children, each of tender age, and when the codicil was executed there were four children, of whom Fred, the eldest, was in his twenty-fourth year and Mary, the youngest, in her tenth year. Manifestly the amount required for the support of the five beneficiaries would vary from time to time. There is no qualifying adjective or phrase like "necessary," "comfortable" or "at the discretion" of the wife. Of course the support must be reasonable, and what is reasonable depends among other things upon the actual physical needs of the beneficiary, his station in life social and otherwise, the demands to be met and the amount of the income. What might be regarded as reasonable under one set of circumstances might not be so regarded under another, even if the income remained the same; and what might be regarded as sufficient when the income was small might not be deemed such when the income was larger, even although there was no other change in the situation. The support is not what the widow considers reasonable, but what the law declares to be such. And although it is the duty of the widow, in whose hands lies the money, to decide in the first instance what is reasonable so that she may perform her trust, the beneficiary, if thinking himself aggrieved, may apply to the court for a revision of that decision; and whether the decision be made by the widow or by the court, the question is always the same, namely, what is a reasonable support under the circumstances? To this each beneficiary is entitled, and to this is the income in

the hands of the widow to be applied. It is not a case where the amount to be expended depends upon the discretion of the widow, and where the question before the court is whether the discretion has been exercised in good faith.

But it appears from the agreed statement of facts that this income referred to in the article under consideration has exceeded the amount which the petitioner has expended, or in her judgment, exercised in good faith, has heretofore needed to expend for the support and maintenance of herself and the care, maintenance and education of her children. This is not a statement that it exceeds the amount which the law would deem reasonable, but from the trend of the remarks made at the oral argument we infer that the amount of the surplus is greater than the widow thinks would in any view be regarded as reasonable. Of course it is her duty to execute the trust, and to make reasonable preparations to meet contingencies, and the surplus of one year may be needed to make up the deficiency in another. But what is to be done with the surplus of income not required for the due execution of the trust?

It is to be noted that the will separates the income from the principal. After the income is paid to the widow it is no longer a part of the main trust fund, but it is subject to a new trust; and there is no express provision in the will that this surplus of income after it is paid to the wife, shall ever go back to the trust fund from which it was separated. On the contrary it would seem from an inspection of the will that the idea of the testator was that there was no occasion to pursue the income after it reached the hands of the widow further than to provide for her support and that of his children. Possibly he did not anticipate that there would be a surplus. But however that may be, although he gives very minute and complete directions for the disposition of the principal of the trust fund in the various possible contingencies of the future, he nowhere makes any further disposition of the income received by the wife under the clause in question. That income we have seen is subject to a trust. Upon the whole we are of opinion that the surplus remaining in the hands of the widow after the execution of the trust does not pass to the heirs as undivided estate, but under the third article to the widow as her own property. In other words, she holds the income not upon a trust

but subject to a trust. Such a construction seems to be in conformity with the dominant purposes of the testator. Under the circumstances of this case we think that the principle of equal division among the *cestuis que trust* which sometimes has been applied, as in *Proctor* v. *Proctor*, 141 Mass. 165, *Jackman* v. *Nelson*, 147 Mass. 300, and *Jubber* v. *Jubber*, 9 Sim. 503, is not here applicable.

The result is that the income paid to the widow is held by her subject, during her widowhood or life, to a trust for a reasonable support of herself and her children, and that so much of the income as is not needed for the execution of that trust is held by her as her own property free from trust. There should be a decree to that effect.

*So ordered.*