OLD COLONY TRUST COMPANY, trustee, *vs.* JOSEPHINE L. WASHBURN.

Suffolk. April 7, 1938. — September 14, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Trust*, Distribution of income. *Devise and Legacy*, Life estate.

In view of all the provisions of a will made when an adopted daughter of the testator was four years old and of a codicil made about ten years later and of attending circumstances, provisions of the will giving the income of the residue of the estate to the testator's widow "for her own use and that of my said adopted daughter" during the widow's life, with certain discretionary powers in the widow to apply the principal for her own and the daughter's benefit, and giving the widow power of appointment of the principal by will, but requiring that she appoint at least one half thereof to the daughter, were construed as justifying payments of the entire income to the widow by a trustee, appointed by the court upon declination of the widow to serve as such.

PETITION in the Probate Court for the county of Suffolk for the allowance of certain accounts of the trustee under the will of William J. Leckie, late of Boston.

The accounts were allowed by *Prest*, J. Josephine L. Washburn appealed.

The case was argued at the bar in April, 1938, before *Rugg*, C.J., *Lummus, Qua, & Dolan*, JJ. After the death of *Rugg*, C.J., the case was submitted on briefs to *Field*, C.J., *Donahue, & Ronan*, JJ.

*Ethelbert V. Grabill*, (*A. G. Gould & H. Shapiro* with him,) for the respondent.

*H. L. Burnham*, for the petitioner.

*W. G. Guernsey,* (*F. E. Jennings* with him,) for Berenice M. Mitton.

*H. B. Hosmer*, for the guardian *ad litem*, submitted a brief.

DOLAN, J.   This case comes before us upon an appeal of the respondent from the several decrees entered in the Probate Court allowing the twenty-fourth to twenty-ninth accounts, inclusive, of the petitioner, as trustee under the will of William J. Leckie (hereinafter referred to as the testator).

The only items of the accounts that are disputed are those showing the payment of the net income of the estate in the hands of the petitioner to the testator's widow, Mary E. Leckie, who died on April 25, 1936. Her will, under which she purported to exercise a power of appointment created by the testator's will, was allowed on May 28, 1936, and the petitioner was appointed and duly qualified as executor thereunder. The rights to the principal of the residuary estate of the testator held by the petitioner were resolved by this court in the case of *Old Colony Trust Co. v. Richardson*, 297 Mass. 147.

The testator died on April 9, 1906, leaving, as his heirs at law, his widow, whom he had married in 1888, and an adopted daughter, the respondent. The latter was adopted by the testator and his wife on May 24, 1894. She was then less than four years old. The testator's will was executed less than two months thereafter, on July 6, 1894, and was duly proved and allowed on May 24, 1906. Under its terms, after a bequest of $1,000 to the respondent to be kept at interest until she reached the age of eighteen years, at which time she was to enjoy the income from the accumulated sum until she became twenty-one years of age, when she was to receive the principal sum, the testator provided as follows:

"The income of all the rest, residue and remainder of my estate, real and personal, I give bequeath and devise to my wife, Mary E. Leckie for her own use & that of my said adopted daughter during her — the said Mary E. Leckie's — life, with full power in her also to apply so much of the principal of said rest residue and remainder,

as she may deem necessary or desirable for her comfortable support and maintenance and that of my said adopted daughter; provided however that so much of said income or of said principal, if necessary, as is needed for a full thorough and broad education of my said daughter shall be so applied. And whatever of said principal shall be remaining at my said wife's death shall go to the persons and in the manner and amounts as my said wife shall by her last will in writing duly executed direct and appoint; provided only that at least one half part thereof shall be given to my said daughter, if then living; and in default of appointment by my wife, the whole of said remaining principal shall be paid and conveyed to my said daughter.

"I desire that my said wife shall assume legal guardianship of the person and property of my said daughter during the latter's minority. I also desire that my wife will, in regard to the several provisions of this will and to the property given by it take the advice of my counsel Joseph Willard of said Boston, attorney at law.

"I appoint my said wife executrix of this will and request and direct that she be not required to furnish sureties on her bond as executrix or in any trust capacity under this will."

By a codicil dated June 2, 1904, the testator bequeathed $30,000 to his wife "but in trust nevertheless" to pay from the income $600 a year in monthly payments to each of his two sisters, Matilda and Helen, "during the life of each of them; the surplus income, if any, to become a part of . . . [his] residuary estate," "the interest of each" to cease entirely at her death, and upon the death of both the principal was to become a part of his residuary estate.

The testator's widow was qualified as executrix of his will, and administered his estate in that capacity. On June 28, 1906, she filed a declination as "trustee under the said will 'for . . . [herself] and Ella J. Leckie'" (now Washburn, the respondent); and on June 28, 1906, the petitioner was appointed trustee for "Mary E. Leckie and another." On June 28, 1906, the widow was appointed testamentary guardian of the respondent, and in her first

account showed personal property amounting to $2,916.09. Of this sum about $2,500 consisted of savings bank deposits, which, at the death of the testator, stood in his name as trustee for the respondent. The petitioner paid the net income of the residuary estate to the testator's widow from June 30, 1906, to the date of her death on April 25, 1936, with the exception of the small balance of income shown as in its possession by its twenty-ninth account. The principal of the estate of the testator in the hands of the petitioner, as shown by its twenty-fourth account, exceeded $280,000.

On March 15, 1910, the respondent, by one Bond as next friend, brought a petition for the removal of the widow as her guardian, alleging that she refused to support her properly. The widow thereupon resigned her office as guardian and Bond was appointed to succeed her. On September 21, 1910, the respondent, through the widow as next friend, brought a petition for Bond's removal, alleging in substance that he was antagonizing her mother, and was threatening to bring proceedings that in effect were directed against her mother contrary to the respondent's wishes. In March, 1911, Bond, "as he . . . [was] guardian" of the respondent, filed a bill in equity in the Supreme Judicial Court for Suffolk County seeking to compel the petitioner to pay to him as guardian one half of the net income of the "trust fund" received by it since the date of its appointment as trustee, or, in the alternative, should the court find that his then ward was not entitled to one half of the income, that the petitioner be ordered to pay to him as guardian "such sum or sums as are necessary for her comfortable support and maintenance." The respondent became of age in December, 1911, and on May 17, 1912, she was substituted as party plaintiff in that suit and assented to a motion, which was allowed, that it be dismissed without prejudice.

Prior to the allowance of the accounts now under consideration, twenty-three accounts of the petitioner showing the payment of the net income from the estate in its hands to the widow were duly allowed. The respondent assented

to fourteen of these accounts. She had due notice of applications for allowance of the remaining nine accounts and did not object thereto. She also assented to the twenty-fourth and twenty-fifth accounts covering the period from January 1, 1931, to December 31, 1932. These accounts were not passed upon by the Probate Court until after the death of the widow, her adopted mother, when they were heard together with the twenty-sixth to twenty-ninth accounts inclusive. Prior to the hearing, however, the respondent was permitted by the judge, on motion, to withdraw her assents to the twenty-fourth and twenty-fifth accounts. Berenice May Mitton, a daughter of the respondent, appeared in support of the accounts now before us. Her interest arises under the terms of the widow's will. A guardian *ad litem*, appointed to represent the interests of persons unascertained or not in being, assented to their allowance.

The respondent contends that under the terms of the testator's will, after her education was provided for, she was entitled to share the net income from the "trust" fund equally with the widow and that such a division and distribution should have been made. She relies largely on the case of *Coburn* v. *Anderson*, 131 Mass. 513, and upon a number of other cases, where express trusts were created for support and maintenance. It would serve no useful purpose to review them as most of them are considered in the case of *Johnson* v. *Johnson*, 215 Mass. 276, to which we will presently refer. Moreover, "The rule for the construction of wills followed by courts in recent times is to ascertain the intent of the testator from the whole instrument, attributing due weight to all its language, and then give effect to that intent unless prevented by some positive rule of law, rather than to try to make the interpretation of particular words or phrases in one instrument square with that before given to somewhat similar words used by some one else under other surroundings to accomplish a more or less different end. *McCurdy* v. *McCallum*, 186 Mass. 464. A few combinations of words have become so fixed in their meaning by long and unvarying use as to be

rules of property. But ordinary canons for the interpretation of wills, having been established only as aids for determining testamentary intent, are to be followed only so far as they accomplish that purpose, and not when the result would be to defeat it. *Crapo* v. *Price*, 190 Mass. 317, 319. *Jewett* v. *Jewett*, 200 Mass. 310, 317. It is permissible also to look at all the material circumstances in the light of which the will was executed in order to comprehend the sense and purpose of the language employed." *Ware* v. *Minot*, 202 Mass. 512, 516.

Examining the will of the testator in the light of these principles, it is clear that in the creation of the trust estate in the codicil for his sisters the testator knew how, with the aid of his attorney, to use apt words to create a trust, as distinguished from the main disposition he made for his widow and through her for the respondent. It is apparent from the terms of the will that the testator had confidence in his wife. It is agreed that they were devoted to each other. He named her as executrix of his will, as trustee for his sisters, and as guardian of his adopted daughter. He gave his wife the income from the residuary estate and yet he did not by his will name her as trustee. We think that he intended her to have the possession and control of the residuary estate. He gave her full power to use so much of the principal of the residue "as she may deem necessary or desirable for her comfortable support and maintenance and that of . . . [his] said adopted daughter," and also to use as much of the income or principal if necessary as was "needed for a full thorough and broad education" of the respondent. She was to take the advice of the testator's attorney "in regard to the several provisions of this will and to the property given by it."

It is significant that the testator did not in express words give, bequeath or devise his residuary estate to a named trustee. He gave the income to his widow with power to use it and so much principal as was needed for the purposes already referred to. In the respect that he did not by words of art give or devise his residuary estate in trust, the present case is even stronger for the view that he in-

tended the income of the residuary estate to be in the hands of his widow in the first instance, than is the case of *Johnson* v. *Johnson*, 215 Mass. 276, where the testator's residuary estate was given to named trustees by the testator upon an express trust to pay the income to his widow for her support and maintenance and for the care, maintenance and education of their children during her life or until she should remarry. It was there held that it was the duty of the widow, in whose hands the income lay, to decide in the first instance what it was reasonable to do that she might perform the trust impressed upon the income; that the beneficiary, if thinking himself aggrieved, could apply to the court for a revision of her decision; and that, in the circumstances of the case, the principle of equal division among the *cestuis que* trust was not applicable.

It is also significant that in making the bequest of $1,000 to his adopted daughter the testator provided that it should be kept at interest until she became eighteen years of age and that, from then until she became twenty-one years of age, she was to enjoy the income on the accumulated sum. It would not appear that the testator would have thus provided for the payment of income from this bequest to the respondent during the period fixed therefor if it was his intention that from his death she was to share the income from his large residuary estate equally with his wife, her adopted mother. It is true the testator did provide that, in the exercise of the power by his widow over the principal of the trust, she was to appoint at least one half thereof to the respondent if living. We do not think, however, that in all the circumstances of the case this provision shows an intention on the part of the testator that in the lifetime of the widow the respondent should occupy a position of equality with her in the enjoyment of the income.

In the instant case we think that, as in the *Johnson* case, although a trust was imposed upon the income of the residuary estate in the hands of the widow, it was the intention of the testator that it was first to be in her hands, "not upon a trust but subject to a trust" to provide reasonably for the support and education of the respondent. The

further provision giving the widow full power to use so much of the principal as need be, for purposes already stated, gives weight to the view that great discretion was reposed in the widow, and that the decision was to be hers in the first instance. No contention has been made that the evidence or particular agreed facts warrant any finding that the testator's widow did not provide adequately out of the income in her hands for the support and education of the respondent. During the life of the trust the respondent never pursued to any conclusion proceedings to establish that such was the fact. After becoming of age, the respondent consented to or acquiesced in the allowance of accounts covering a period of twenty-three years, in which the widow was shown to have been paid the net income of the residuary estate. Apart, however, from these latter considerations we are of opinion that the net income from the residuary estate of the testator was properly paid into the hands of the widow in the first instance, that it then became separated from the main trust, and that it was not the duty of the petitioner to pursue the income further. The entry will therefore be

*Decrees affirmed.*