JOHN PHELPS *vs.* GERTRUDE C. MATTOON.

Franklin.　September 17, 1941. — October 29, 1941.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Trust,* Express: what constitutes, construction; Constructive. *Laches. Equity Jurisdiction,* Laches.

Under a clause of a will giving all the testator's property to his wife "to be administered by her for the benefit of herself and children," and to others upon her death, with a privilege given to her to have one third of the estate "set off for her exclusive use," a trust of all such property for the benefit of her and a child of the testator and her arose upon her not exercising such privilege.

There was no error in a finding that a remainderman who would be entitled to a trust fund at the death of a life beneficiary, by acquiescing, while a minor, in a diversion of property of the trust to a third person not permitted by the trust instrument and by taking no action respecting the diversion for more than thirty years after becoming of

age, had been guilty of laches barring his suit to recover such property from the third person after the death of the life beneficiary.

One, who, with knowledge that a loan had been made from trust funds, without giving consideration took an assignment of a mortgage securing repayment of the loan, was a constructive trustee of the mortgage for the person entitled to the trust property.

BILL IN EQUITY, filed in the Superior Court on November 13, 1939.

The plaintiff appealed from a final decree entered by order of *Buttrick*, J.

It appeared from the master's report that in 1903 Anna B. Phelps lent $2,000 to Jennie C. Mattoon, a relative; that a mortgage was "taken back as security in the name of the defendant"; that the defendant subsequently received $2,000 as "payment of the mortgage in full"; that in 1915 Anna B. Phelps lent $5,000 to Jennie C. Mattoon, who gave her a mortgage as security; that the later mortgage was assigned to the defendant in 1933; and that both loans to the defendant's knowledge were from funds derived by Anna B. Phelps under the will of John W. Phelps. Among the prayers of the bill were prayers for an accounting "of the property received by" the defendant "from the estate of John W. Phelps" and that the defendant be ordered to pay to the plaintiff "all moneys and property coming into" the defendant's hands "which had been assets of the estate of" John W. Phelps.

*M. J. Levy*, for the plaintiff.

*J. T. Bartlett*, for the defendant.

Cox, J. The plaintiff, by this bill in equity, seeks, in effect, to recover certain assets to which he alleges he is entitled under the terms of his father's will. He is the son and only issue of John Wolcott Phelps and Anna B. Phelps, both deceased. The defendant is a sister of his mother. His father died in 1885, and his mother on October 9, 1938. The suit was referred to a master, whose report was confirmed by interlocutory decree, and a final decree was entered dismissing the bill. The evidence is not reported, and it does not appear from the master's report that his ultimate findings of fact are based solely on the subsidiary

facts therein set forth. It is upon this, as a basis, that we proceed to consider the case. See *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435, 436.

By the will in question, which was executed on April 23, 1884, and allowed on February 28, 1885, by a probate court of Vermont, where the testator lived and died, all his property was given to his wife "to be administered by her for the benefit of herself and children: and at her death it is to go to the issue between us if any any [*sic*] survive. Or if none should then survive, then it is to go in equal shares to my nephews and nieces, . . . or to their heirs" subject to the payment of certain annuities. After a description of the testator's real and personal property, the will provides: "Should my wife Anna prefer at any time to have one third of my estate set off for her exclusive use, then I hope that it will be done without any sale of the property, if possible: and no sale of the shares mentioned to be made unless they are at or near par value."

It is important to determine what Mrs. Phelps took, or could have taken, under her husband's will. We are of opinion that the first quoted portion of the will created a trust for her benefit and that of her son. *Andrews* v. *Bank of Cape Ann*, 3 Allen, 313. *Johnson* v. *Johnson*, 215 Mass. 276, 285–286, and cases cited. See *Sherwin* v. *Smith*, 282 Mass. 306, 310, 311. Our attention has not been directed to any Vermont law to the contrary. See *Walker* v. *Lloyd*, 295 Mass. 507, 510. At the death of Mrs. Phelps, the disposition of "it" ("all my property") is subject to the contingency of survivorship of issue, but "it" is completely disposed of. The importance of the clause dealing with the possible preference of the widow is indicated by the contention of the defendant that it should be interpreted to mean that she had a right at any time to take one third of the estate outright, and also that a division of the estate actually occurred during her lifetime, with the result that at least some of the assets that the plaintiff seeks to recover were her own funds which had come to her under the terms of the will.

The testator was domiciled in the State of Vermont, and

may be fairly assumed to have relied upon the law of that State for the rules to be applied in an interpretation of his testamentary words. *Johnson* v. *Johnson*, 215 Mass. 276, 285. *Wheeler* v. *Moulton*, 290 Mass. 567, 575. *Drake* v. *Wild*, 70 Vt. 52, 58, 59. *University of Vermont & State Agricultural College* v. *Ward*, 104 Vt. 239, 262. It might seem that the testator had in mind that his widow might waive the provisions of the will in her behalf and take her dower. Vermont R. L. §§ 2215, 2219, 2220. But one difficulty with this suggestion arises from the fact that the testator expressed the hope that, if one third of his estate was set off for Mrs. Phelps's exclusive use, it would be done "without any sale of the property, if possible." Our attention has been called to no provision of Vermont law, in force at the time the will in question was executed, that would call for, or permit, any sale of the real estate in the circumstances if dower was claimed. See Vermont R. L. §§ 2220, 2221, 2223. See now Acts of 1896, No. 44, § 9. There would seem to be little cause to expect that Mrs. Phelps would claim dower when provision already had been made that all of the estate was to be administered for her benefit and that of the children. The testator may have thought, however, that his widow might prefer to take one third of his estate outright, and we are inclined to the opinion that, after a fashion, he expressed the intention that this could be done if the necessary steps were taken to bring it about. The language that he used, however, to accomplish this purpose does not amount to an outright gift of one third of his estate, but, on the contrary, contemplates the expression of a preference on the part of Mrs. Phelps, together with a "set off." If we assume that she had expressed a preference, and that this would be tantamount to the accomplishment, in part, of the intention of the testator to give her one third of his estate, then it would seem that he had in mind, as, in fact, he expressed it, that the one third should be "set off" to her. Under the law of Vermont in force at the time the will was executed, a person holding real estate with others in certain circumstances, could have partition, and, if so entitled, the

commissioners appointed were required to make partition of the estate by dividing and "setting out" to each owner his share by metes and bounds. Vermont R. L. §§ 1275, 1283, 1285. But where it appeared that the real estate, or a portion thereof, could not be divided without great inconvenience to the parties interested, it was provided that the estate be sold. Vermont R. L. §§ 1288–1291, inclusive. It is to be observed that in these provisions of the Vermont law relative to partition, the commissioners appointed are to make partition and "set off" each share; that they shall make such partition by dividing and "setting out" to each owner his share by metes and bounds; and that the commissioners, having made partition, shall make return to the court of their doings, with a description of each portion of the estate "divided."

As bearing upon the question whether Mrs. Phelps ever expressed any preference, the master found that in 1903, when the plaintiff was nineteen years old, his mother told him that she was about to make a loan of $2,000, secured by a real estate mortgage, to one of her relatives. She told him, in substance, that if he should die before she did, "the money will all go back to the Phelps family and Gertrude (meaning the defendant) won't have any of it. Do you object if I have the mortgage made . . . in favor of Gertrude? It will be returned to you. I'll see to that." The plaintiff assented, and the loan was made. The master found that the purpose of taking this mortgage in the name of the defendant was to prevent the nephews and nieces of the testator, and other persons, from taking under the provisions applicable in the event that no issue survived Mrs. Phelps. The income from this loan was always received by her, and the $2,000 was derived from property received by her under the will. The master also found that, although the plaintiff on numerous occasions asked his mother "to divide up the estate and give him two thirds outright, she was never willing to do so." He also found that there was no "formal set-off by them of two thirds to the plaintiff and one third" to Mrs. Phelps, although the plaintiff did receive "a very substantial share

of the estate . . . at different times over a period of nearly forty years," and he states that he is not satisfied, on all the evidence, that there was any intention on the part of either the plaintiff or "his mother to make a division of the estate into thirds, in accordance with what they probably believed would have been permitted by the terms of the will." He also found that it was at least believed by the plaintiff and his mother that the latter was required by the will so to administer the estate that at her death the plaintiff would receive it, or, at least, that she did not think she was permitted to transfer a substantial amount of it outright without consideration, and also that, since the plaintiff and his mother knew of the provisions of the will and believed that the persons mentioned therein had rights to the estate contingent on the plaintiff's predeceasing his mother, they knowingly and intentionally disregarded the rights of those persons.

There was no evidence before the master as to the exact amount of the estate. There was evidence of the sale of a store in Chicago and of certain sales of stock for from $13,600 to $14,100, and that the plaintiff received all of these sums during his mother's lifetime. Other shares of stock were sold for from $3,500 to $3,600, and Mrs. Phelps retained the proceeds of these sales. There was no evidence as to what the other real estate brought that was sold by Mrs. Phelps, who retained the proceeds, and the master stated that it was impossible to say with any degree of accuracy whether the plaintiff did, in fact, receive substantially two thirds of the estate, in view of the impossibility of determining the size of the estate or the total amounts received by Mrs. Phelps from the sales of property. It is true that the sums received by the plaintiff from his mother, and the $7,000 represented by the two mortgages that are the subject matter of this suit, amount to substantially $21,000, of which $7,000 is substantially one third. But we are of opinion that this coincidence, if it be a coincidence, and the conduct of the parties themselves, cannot affect our conclusion that Mrs. Phelps, in the circumstances, took under the will all of the testator's property, as trustee for her

benefit and that of her children, and that whatever beneficial interest she had terminated at her death.

In addition to the findings of the master already related relative to the $2,000 mortgage, he found that the plaintiff, after he became of age, acquiesced in allowing the mortgage to remain in the defendant's name, and inferred that he approved or ratified his mother's expressed intention to deprive the "Phelps family" of that property in the event that he should predecease her. He also found as a fact that the conduct of the plaintiff in respect to this loan constituted laches, which was pleaded, although he found that the plaintiff did not acquiesce in permitting the defendant to keep the $2,000 which she received in 1938, except in so far as he failed to take action until the bringing of this bill. The plaintiff could not know that he would survive his mother until she died in 1938. From 1903 until that time, at least, he acquiesced in the plan of his mother to deprive the "Phelps family" of their possible interest in the estate of his father. He was a minor when he first acquiesced, but for over thirty years after he became of age he did nothing about it. It is unnecessary to traverse again the ground as to what constitutes laches. We are of opinion that the elements are present in the case at bar, although the master found that the defendant must have known that the $2,000 was derived solely from the estate of the testator and that the plaintiff and his mother believed that the latter was required by the will so to administer that property that, at her death, the plaintiff would receive it. The finding of laches cannot be disturbed.

Mrs. Phelps also lent $5,000 to the same relative who received the loan of $2,000. This loan was made from funds that "had been received or derived from property" of the testator and was secured by a real estate mortgage to Mrs. Phelps, dated October 20, 1915. On July 18, 1933, she assigned this mortgage to the defendant. The assignment was duly recorded, and, although the plaintiff knew of the mortgage, the first knowledge he had of its assignment was after his mother's death. The master found, "on the evidence of the defendant herself," that no present

consideration was given for this assignment, "the sole object of which was to discharge what . . . [Mrs. Phelps] felt was a moral obligation to her sister, who had taken care of their aged parents and who had done a very considerable amount of household work, and even farm work, for all the years the sisters lived together," and that the assignment was "really made because of the affection . . . [that Mrs. Phelps] had for her sister, the defendant, and because she wished her to have some property if she . . . [Mrs. Phelps] should predecease her." He also found that the defendant knew, or should have known, that these two loans were derived solely from the testator's estate; that the plaintiff and his mother shared in the belief, hereinbefore stated, as to the administration of the property, and also that Mrs. Phelps did not think that she was permitted to transfer a substantial amount of it outright to the defendant without consideration. After the assignment of this mortgage, the defendant received the semi-annual interest payments, but they were deposited in Mrs. Phelps's checking account and used to pay taxes on the farm that was owned by the defendant and occupied by Mrs. Phelps, the plaintiff and her.

The plaintiff, in order to prevail, must show that the defendant was a constructive trustee. We are of opinion that she was. *Otis* v. *Otis*, 167 Mass. 245, 246. *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 252, 253. *Berry* v. *Kyes*, 304 Mass. 56, 59, and cases cited. *Milbank* v. *J. C. Littlefield, Inc.*, ante, 55, 64.

For reasons already stated, the plaintiff is not entitled to anything on account of the $2,000 mortgage transaction. He is, however, entitled to a decree ordering the defendant to assign and transfer to him the $5,000 mortgage and note, and to pay him whatever interest instalments she has received since the death of Mrs. Phelps on October 9, 1938. Further hearing in the Superior Court may be necessary to determine this. It follows that the interlocutory decree confirming the master's report is affirmed, the final decree is reversed, and decree is to be entered in conformity with this opinion.                    *Ordered accordingly.*