BOSTON SAFE DEPOSIT and TRUST COMPANY, trustee, *vs.*
ALFRED UNIVERSITY & others.

Worcester. March 2, 1959. — April 21, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Trust,* Situs, Corpus, Remainder. *Jurisdiction,* Trust. *Equity Jurisdiction,* Instructions. *Power. Executor and Administrator,* Appointive property. *Conflict of Laws.*

A Massachusetts Probate Court properly gave instructions to a Massachusetts trust company, trustee under the will of a testator who died domiciled in another State, respecting disposition of the trust fund held by the trustee here. [85]
The equitable contingent remainder interest of one bequeathed a share in a testamentary trust fund "upon the death of . . . [the testator's son] without issue" was transmissible by the remainderman under the law of Florida and, upon his death domiciled in Florida, before the death of the son, it passed under the residuary clause of the remainderman's will and later ripened into full ownership in possession and enjoyment upon the death of the son without issue. [87]
A widow's will, providing "I hereby elect to exercise the [general] power of appointment [by will] given me by my late husband . . . by his last will . . .. By virtue of said power of appointment, I do hereby . . . appoint unto . . . [a named university] all of the corpus of the trust estate now held" by a trustee under her husband's will, effectively appointed under the law of both Florida and Massachusetts an equitable contingent remainder interest in another trust fund possessed by her husband which had passed into the corpus of the trust under his will upon his death. [87–88]

Upon the death of a widow domiciled in Florida leaving a will probated there validly exercising a general power of appointment over a fund held in Massachusetts by a trustee under the will of her husband for distribution at her death, the trustee should pay the fund over to the ancillary representatives of the widow's estate here for transfer to her appointee, subject to the rights, if any, of the creditors of her estate. [88–89]

PETITION for instructions, filed in the Probate Court for the county of Worcester on April 17, 1957.

The case was heard by *Wahlstrom, J.*

*James A. Crotty, Jr.,* stated the case.

*Remsen M. Kinne, III,* for Alfred University.

*Jack E. Tracy,* for Worcester Polytechnic Institute.

CUTTER, J. This is a petition for instructions by the trustee under the will of William L. Ames, who died in 1938 with his domicil in Florida. By his will, he gave to Boston Safe Deposit and Trust Company (hereinafter called the trust company) the residue of his estate, in trust to pay the income to Mrs. Ames for her life and upon her death "to pay the balance of the trust estate to such persons or institutions or for such objects as my said wife shall by her last will direct and appoint, but in the absence of such appointment, to the Worcester Polytechnic Institute" (hereinafter called Polytechnic). It is stipulated that the fund thus given in trust under Ames's will "was held in Massachusetts by" the trust company, "a Massachusetts trustee." Ames's will was admitted to probate in Florida and ancillary letters testamentary were issued in Massachusetts to an administrator with the will annexed. Mrs. Ames died "domiciled in Florida on July 21, 1952, leaving a will . . . and a codicil which were" admitted to probate in Florida. By her will she provided, "I hereby elect to exercise the power of appointment given me by my late husband . . . by his last will . . . . By virtue of said power of appointment, I do hereby . . . appoint unto Alfred University . . . all of the corpus of the trust estate now held (under said will of . . . Ames), for my benefit as life tenant by Boston Safe Deposit and Trust Company . . . provided, however, the gift under this power of appointment is made for the purpose of completing the origi-

nal building plan . . . of Susan Howell Social Hall at Alfred University, and also for the purpose of improving . . . the music department . . . ."

The question here presented arises with respect to an interest under the will of one Thomas Prince who, by his will and codicil admitted to probate in Massachusetts,[1] gave the residue of his estate to "Worcester Bank & Trust Company, a banking corporation located in Worcester, Massachusetts," in trust, among other things, to set aside $100,000, the income of which was to be paid to Prince's son, Harold T. Prince, during his life. Prince then provided, "7. Upon the death of my said son, without issue, his . . . widow and . . . Lucius T. Hayward, or any of them, I direct my said trustee to divide the funds . . . among the beneficiaries and in accordance with . . . paragraph 5 above." Paragraph 5 provided, "5. After setting aside the above . . . sums and paying the above . . . legacies, I . . . direct my . . . trustee to divide equally among . . . [six persons including 'William L. Ames of Worcester, Massachusetts'] . . . all the remaining property then in its hand . . . share and share alike . . . ." Harold T. Prince died on September 28, 1955, without issue surviving him. Presumably, although the record does not so state, Lucius T. Hayward is also dead. The share of Ames in the Prince trust corpus was paid to the ancillary administrator of his estate who in turn paid it over (less minor expenses) to the trustee under the will of Ames. This is the fund here in issue.

The present petition for instructions was brought by the trust company as trustee under Ames's will against Alfred University, Polytechnic, Helen Ball (Ames's daughter), and one West and one Howell, executors of the will of Mrs. Ames. Alfred University and Polytechnic appeared and answered.[2]

---

[1] The record does not disclose where Prince had his domicil at his death. We were told at the arguments that he died a resident of Oregon. In the view that we take of the authorities, it makes no difference, in any event, that his domicil was not in Massachusetts.

[2] There is no indication in the record that the petition has been taken pro confesso against the other respondents under Rule 25 of the Probate Courts (1934). *Smith* v. *American Missionary Assn.* 240 Mass. 26, 29. See Newhall, Settlement of Estates (4th ed.) § 30, n. 3. No questions have been presented

A final decree was entered directing that the trustee "pay the net trust res to . . . Polytechnic." Alfred University appealed.

1. Although Ames died domiciled in Florida, his testamentary trust "fund . . . was held in Massachusetts by . . . a Massachusetts trustee." The record does not show to what extent any appropriate Florida court has recognized Massachusetts as the State whose law was intended to govern the administration or validity and effect of his testamentary trust, under Fla. Sts. (1957) § 737.02 or otherwise. Cf. G. L. c. 206, § 29. Ames's appointment, however, of a Massachusetts trust company as his testamentary trustee, indicates that he intended the trust to be administered in Massachusetts. It is thus appropriate for a Massachusetts court to give the trust company instructions about the execution of that trust. *Amerige* v. *Attorney Gen.* 324 Mass. 648, 659, and authorities there reviewed. Restatement: Conflict of Laws, § 299, comment a, illustration 2. Goodrich, Conflict of Laws (3d ed.) § 159. Stumberg, Conflict of Laws (2d ed.) 431–436. See *Hutchins* v. *Browne*, 253 Mass. 55, 57–58. The trustee is present in the State and subject to the jurisdiction of a Massachusetts court. Cf. *Harvey* v. *Fiduciary Trust Co.* 299 Mass. 457, 464; *Sadler* v. *Industrial Trust Co.* 327 Mass. 10, 12–13; *Hanson* v. *Denckla*, 357 U. S. 235, 246–256; Scott, Comment, *Hanson* v. *Denckla*, 72 Harv. L. Rev. 695.[1] Nothing in *Jenkins* v. *Lester*, 131 Mass. 355, 357–358, prevents giving instructions in cases of this type.

We need not decide whether the law of Massachusetts or that of Florida governs the validity and effect of the trust provisions of Ames's will and of the exercise of Mrs. Ames's power of appointment. See the *Amerige* case (324 Mass. 648, 659–660) which indicates that circumstances other than the testator's domicil must be taken into account in

to us by or with respect to these other respondents. If there has been any failure to comply with applicable formal requirements, appropriate steps to comply may be taken in the Probate Court before final decree after rescript.

[1] Cf. Reese and Galston, Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction, 44 Iowa L. Rev. 249, 255–258.

appropriate cases. Cf. Restatement, Conflict of Laws, § 295.[1] There have been brought to our attention no differences between the substantive property law of Massachusetts and that of Florida, which make necessary any such decision as to the applicable law.

2. The equitable remainder interest (see *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 468) of Ames under the testamentary trust established by Prince was contingent only as to whether the life beneficiary would die without issue living at his death and not as to the person to take. Even if contingent, the interest was transmissible under Massachusetts law. See *Nickerson* v. *Harding,* 267 Mass. 203, 206–207; Newhall, Settlement of Estates (4th ed.) § 356, p. 453; Gray, Rule against Perpetuities (4th ed.) § 118, p. 112. Cf. *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 467–469; *Parkhurst* v. *Jonsberg,* 324 Mass. 66, 69–70. Cf. also *Whiteside* v. *Merchants Natl. Bank,* 284 Mass. 165, 174.

The record itself does not suggest that Prince did not have his domicil in Massachusetts at his death. It does show the appointment of a Massachusetts trust company as his testamentary trustee, confirmed by probate of his will here. In any event, we need not consider whether Oregon or Massachusetts law governs the determination of the nature of Ames's contingent interest under the Prince trust, even if Prince had (as counsel states) his domicil in Oregon. From the authorities brought to our attention, it appears that, under the law of Oregon[2] as well as that of Massachu-

---

[1] Currently this and related provisions (e.g. §§ 284–288) of the Restatement are in process of expansion and reconsideration, but the relevant sections have not yet been printed in a published tentative draft of Restatement 2d: Conflict of Laws. For discussions of the recent development of the law in this area, see Land, Trusts in the Conflict of Laws, esp. §§ 17–20, 23, 29, 29.2, 36.1–36.4; Capron, Situs of Trusts in Conflict of Laws, 93 Trusts and Estates 878; Durand and Herterick, Conflict of Laws and the Exercise of Powers of Appointment, 42 Corn. L. Q. 185, 190–200; Page, Wills (3d ed.) §§ 1631–32, 1637, 1639, 1641, 1647–1648; Powell, Real Property, ¶ 534; Comment, 55 Mich. L. Rev. 431. Relevant Massachusetts cases are collected in Korb, The Effect of Multi-State Contacts in Express Trusts, 43 Mass. L. Q. (No. 1) 29.

[2] *Love* v. *Lindstedt,* 76 Ore. 66, 72–73. See *Jerman* v. *Nelson,* 135 Ore. 126, 134. Cf. *Koehler* v. *Clark,* 170 F. 2d 779, 783 (9th Cir.). See also discussion in Scott, Trusts (2d ed.) § 80; Simes & Smith, Future Interests (2d ed.) §§ 112,

setts, the equitable contingent remainder interest of Ames under the Prince will was transmissible and could pass by Ames's will to the trust company as trustee.

3. Since Ames was domiciled in Florida at his death, we assume that Florida law (in the absence of special circumstances, not here present, applicable to property at its situs) would determine (see *Lee* v. *Monks*, 318 Mass. 513, 515–516; app. dism. 326 U. S. 696; Restatement: Conflict of Laws, §§ 306, 308) what transmissible personal property interests would pass by his will. No Florida authority brought to our attention indicates that his interest under the Prince will would not pass by an all inclusive residuary article of the type found in his will, where there is absolutely nothing in the record to suggest that any property interest possessed by Ames was reserved from the operation of that article. See Fla. Sts. (1957) § 731.05. Redfearn, Wills and Administration of Estates in Florida (2d ed.) § 146, p. 217. That remainder interest existed when Ames made his will in 1931.[1] It became in 1938 at his death a part of the corpus of the trust under Ames's will, as an interest, acquired by the trust company, in an inchoate way at the death of Ames, which ripened into full ownership in possession and enjoyment later at the death of the life beneficiary, Harold T. Prince, without then living issue. See analogy of the tax situation considered in *Second Bank-State St. Trust Co.* v. *State Tax Commn.* 337 Mass. 203, 211–214.

4. Mrs. Ames effectively appointed the interest here in question. By her will she specifically referred to the power of appointment given to her by Ames's will, elected "to exercise the power of appointment," and appointed "unto Alfred University . . . all of the corpus of the trust estate

---

191 (p. 211), 1855, 1883, 1902; Tiffany, Real Property (3d ed.) §§ 319, 341; Am. Law of Property, §§ 4.67, 4.74, 4.75; Restatement: Property, §§ 165, 270; *Hayes* v. *Hammond,* 336 Mass. 233, 239n; *In re Clayton's Trust Estate,* 195 Md. 622, 625. Florida law appears to be the same. Fla. Sts. (1957) § 731.05 (1). Redfearn, Wills and Administration of Estates in Florida (2d ed.) § 174, n. 195. See *Richardson* v. *Holman,* 160 Fla. 65, 70; *Anderson* v. *Dimick,* 77 So. 2d 867, 868–869 (Fla.).

[1] The parties in their briefs state that Prince died in 1920, although this fact does not appear in the record.

now held" by the trust company for her "benefit as life" beneficiary. Since the equitable remainder interest was then part of the corpus of the trust under Ames's will, the language of the appointment was broad enough to appoint it (including its inherent possibility of ripening into a vested interest) to Alfred University. Her will revealed no intention to exclude any interest (vested or contingent) held by the trust company from that appointment, which was not in any respect a partial exercise of a power of appointment. Cf. *Welch* v. *Morse,* 323 Mass. 233, 237. Florida and Massachusetts both recognize that the exercise of a power of appointment by the donee of the power (in the manner permitted by the instrument creating the power) will be treated as accomplished where the donee's affirmative intention to exercise the power is clearly shown as here. *DePass* v. *Kansas Masonic Home Corp.* 132 Fla. 455, 459, 466. *Frye* v. *Loring,* 330 Mass. 389, 394. Restatement: Property, §§ 322 (1), 342. See Newhall, Settlement of Estates (4th ed.) § 366. Cf. *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 365–367; Annotations, 91 A. L. R. 433, 127 A. L. R. 248.

5. Mrs. Ames, by her exercise of the general power of appointment under Ames's will, made the appointed property in equity a part of her estate available to satisfy creditors. *Olney* v. *Balch,* 154 Mass. 318, 321–322. Although under a special power of appointment direct transfer of the appointed trust assets to the appointees is to be made (see *Prescott* v. *Wordell,* 319 Mass. 118, 120; Restatement: Property, § 326), under this general power of appointment the appointed assets appropriately should be paid to Massachusetts ancillary executors of Mrs. Ames's will, or administrators with her will annexed. See *Russell* v. *Joys,* 227 Mass. 263, 268. See also *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 23; Newhall, Settlement of Estates (4th ed.) § 365, p. 490; § 369.

6. The final decree is reversed. The trustee under Ames's will is to be instructed that there was a valid exercise by Mrs. Ames of the power of appointment given to her by the

residuary article of Ames's will, and that Alfred University is entitled to receive the property still held in trust under Ames's will, subject to the rights, if any, of creditors of Mrs. Ames's estate. The case is remanded to the Probate Court for further proceedings in conformity with this opinion. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*