SECOND BANK–STATE STREET TRUST COMPANY, trustee, *vs.* LEONARD P. WESTON & others.[1]

Suffolk.   November 10, 1960. — May 10, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Devise and Legacy,* Heirs at law, Remainder.  *Conflict of Laws.*  *Words,* "Heirs at law," "Then," "Expectant or presumptive or vested share."

Resort must be had to rules of construction in determining the intent of the testatrix respecting a provision in a will where her intent could not be ascertained solely by interpretation of the language used by her. [633]

The construction of language designating beneficiaries of a trust in the will of one who died domiciled in another State was governed by the law of that State in the absence of any indication of a contrary intent

---

[1] Those persons presently representing the heirs at law of the testatrix determined at the date of her death in 1911; those persons who were the testatrix's heirs at law determined at the date of the termination of the trust by the death in 1958 of Lillian Vinton, the testatrix's last surviving daughter; and the person who is both Lillian's executor and the administrator of the estate of her late sister Eleanor.

on the part of the testatrix, even if the will provided for administration of the trust in Massachusetts.   [635–636]

Discussion of Maryland decisions dealing with the construction of wills with respect to the time of determination of the members of a class given an alternative contingent remainder interest in a trust in the event of failure of a first provided gift of a contingent remainder interest therein.   [636–640]

Construed according to Maryland rules of construction, the will of one who died domiciled in that State, providing for payment of the income of a trust fund to the testatrix's daughters or their issue and for transfer of the trust principal, upon the death of the last survivor of the daughters, to the daughters' issue or, in default of such issue, mostly to the testatrix's "heirs at law," meant that such heirs should be determined as of the date of the death of the last surviving daughter rather than as of the date of the testatrix's death.   [631–632, 640–641]

PETITION for instructions filed in the Probate Court for the county of Suffolk on September 11, 1958.

The case was heard by *Wilson, J.*

*Robert B. Hearne,* stated the case.

*Asa E. Phillips, Jr.,* for Leonard P. Weston.

*Clarence A. Barnes,* for Arthur H. Weston, Jr., and others.

*Augustus W. Soule, Jr., (John T. Noonan, Jr.,* with him,) for Elsie Hopkins Yarnell and others.

*Elliott V. Grabill, (Douglas L. Ley & Samuel A. Wilkinson* with him,) for ʻCharles ʻC. Wallace, executor.

*Bernard I. Kaplan & Sumner Z. Kaplan,* for Adrian Holmes Onderdonk, Jr., and others, submitted a brief.

CUTTER, J.   Maria E. Vinton (the testatrix), the widow of an inhabitant of Massachusetts, died June 11, 1911, having her domicil in Maryland.   Her will, made in 1892 when she was already a widow, described her as of Baltimore. A codicil dated April 28, 1911, is not significant in this case. Her will was allowed in Maryland on July 12, 1911, and ancillary letters were issued in Massachusetts.

By art. Third of her will,[2] the testatrix gave the residue

---

[2] This article, so far as relevant, reads, "Third:—All the . . . residue . . . of my property . . . I . . . bequeath to the [t]rustee . . . in trust, . . . Viz:—To . . . pay the [net] income . . . to my daughters as long as they may live, share and share alike.   In case of the death of any daughter leaving issue, then such daughters share in the income is to be paid to such of her issue as the said daughter shall, by will appoint and in default of such ap-

in trust to her trustee, William Allen Hayes of Cambridge, Massachusetts. Upon the death of the last of her three daughters to die, the trust fund was to be distributed among the issue of the testatrix's daughters per stirpes, but in the event, which occurred, of the death of all three daughters "leaving no issue surviving them," the trust fund (after certain relatively small pecuniary gifts not here in issue) was to "go to my [the testatrix's] heirs at law."

In 1918, two individuals were appointed trustees of the residuary trust by the Probate Court for Suffolk County, Massachusetts, and the trust has been administered in Massachusetts. The trust has now terminated by the death of Lillian Vinton, the last surviving daughter. The sole remaining successor trustee has brought this petition for instructions as to the disposition of the trust fund.

The Probate Court entered a decree that the ultimate remainder gift of the trust fund "to the testatrix's 'heirs at law' means to those persons who were [the] testatrix's heirs at law as of the time of her death, namely her three daughters." The heirs at law of the testatrix, determined at the death of Lillian Vinton on May 4, 1958, are descendants of the testatrix's parents. They have appealed from the decree of the Probate Court.

pointment then . . . to be divided equally among the issue of such daughter, but if any of my daughters shall die without issue, the share in the income of such deceased daughter or daughters is to be divided among her surviving sisters and upon the death of all my said daughters, in trust to divide the principal of said [t]rust fund among the issue of my said daughters per stirpes . . ., if all my daughters should die leaving no issue surviving them, then the principal of said [t]rust fund is to be paid by my said trustee, as follows:—[then follow two contingent pecuniary gifts to friends, which did not take effect, and a $10,000 gift to a charity]. Any remainder of said [t]rust fund not distributed in the manner aforesaid, shall go to my heirs at law. In any case where the income of the [t]rust fund shall be payable under this [w]ill to a married woman, the same shall be paid to her sole and separate use and upon her sole receipt and free from the control of her husband and not in compliance with any assignment or anticipation. I . . . authorize the trustee . . . in his uncontrolled discretion . . . upon the request of any child or grandchild of mine to advance to said child or grandchild a portion of the principal of said trust fund, but no advancement to such child or grandchild shall exceed one half of the value of the then expectant or presumptive or vested share of such child or grandchild. If any of my daughters after receiving such advance shall die without leaving issue her surviving, such advance shall not be held to be a charge against the estate of such daughter."

From a genealogical chart in the record it appears that, when the will was made in 1892, the testatrix, then a widow, had three living minor daughters, Eleanor, aged thirteen, Lillian, aged eleven, and Pamela, aged nine. She also then had two living married sisters and two living married brothers, some of whom had then living children. Her will makes no mention by name of her brothers or of their or her sisters' issue.

1. The question for decision is whether the ultimate remainder gift "to my heirs at law" in art. Third (see footnote 2, *supra*) upon the death of all the testatrix's "daughters . . . leaving no issue surviving them" is to the testatrix's heirs at law determined at her death in 1911 or at the death in 1958 of Lillian, her last surviving daughter. We first attempt to ascertain the testatrix's intention by interpretation of the language used by her, giving weight to the ordinary meaning of the words used, the context in which they appear, and other relevant evidence, including the circumstances in which the will was drafted. If her intention cannot be ascertained by such interpretation we must have resort to rules of construction.

The term "heirs at law" as used in art. Third is not directly limited (as would have been appropriate, see Powell, Real Property, § 377, at p. 239) by any express statement of the time as of which or the law by which they are to be determined. In the sentence making the gift, the word "then" is not used. In the preceding sentence it is used in the sense of "in that event." As so used it is without significance in interpretation. See Restatement: Property, § 308, comment o; Simes & Smith, Future Interests (2d ed.) § 734, at p. 204; Am. Law of Property, § 22.60, at pp. 438–439; Powell, Real Property, § 375, at p. 222.

General indications of intention may be gained from the will and the background circumstances. (1) All relevant provisions of the will show that the testatrix's primary concern was with her daughters and their possible issue. (2) The testatrix showed little direct concern about her collateral relatives either in 1892 or at the time of the 1911

codicil, and on each occasion she did not mention by name most of those collateral relatives then living.    (3) It is suggested that the provision, for an ''advance'' to a daughter of a part of the principal of the trust fund, not exceeding ''one half . . . of the then expectant or presumptive or vested share of such'' daughter, might have little meaning unless the daughter as an ''heir at law'' could take a share of principal by way of remainder.    This provision may be interpreted sensibly and in a practical manner which will accomplish the testatrix's obvious purpose, if it is treated as permitting an ''advance'' to a daughter of up to one half of the share of principal from which she may have been currently receiving the income.    Upon this interpretation, a daughter would have a vested equitable life interest, which would come within the word ''vested'' in the provision.    The provision, of course, could conceivably have reference to one half of the amount of principal which she would take as an ''heir at law'' by way of contingent remainder, an existing interest in which there may be an expectant or presumptive share, and not only a mere expectancy or possibility.    See Simes & Smith, Future Interests (2d ed.) § 2; Am. Law of Property, § 4.1, at p. 407. A more probable reason, however, for the use of the words ''expectant or presumptive'' in the provision is the possibility (existing at the date of the will and at the testatrix's death) that a daughter of the testatrix might die leaving a child surviving her prior to the death of the last surviving daughter.    Such a child would have had at least an expectant or presumptive share of the trust fund to which the provision for advances could have had application.    In view of these considerations, the provision seems of slight assistance in the present problem.

We conclude that the remainder gift to the testatrix's heirs at law was inserted simply to ensure that, if all the earlier dispositions should fail, the intestacy law would ''take its course.''    See *Whall* v. *Converse,* 146 Mass. 345, 348; Powell, Real Property, § 372, at p. 196; Am. Law of Property, §§ 22.57, 22.60.    The general indications of the

testatrix's intention mentioned above, however, give insufficient assistance to enable us, as a matter of interpretation of the language alone and unaided by rules of construction, to determine the time as of which the testatrix intended the intestacy laws to be applied. Accordingly, in deciding what the testatrix meant by the term "heirs at law," we consider (a) whether we should apply Maryland or Massachusetts law to its construction, and (b) whether, if Maryland law is applicable, the courts of that State would apply any different rule of construction from our own.

2. Although the testatrix at her death had her domicil in Maryland, she was the widow of an inhabitant of Massachusetts and appointed an inhabitant of Massachusetts as her executor and trustee. It has not been shown by whom the will was drawn or what property the testatrix owned either when the will was made or at her death. She seems to have intended that the trust be administered in Massachusetts so that Massachusetts law would govern matters affecting trust administration. See *Boston Safe Deposit & Trust Co.* v. *Alfred Univ.* 339 Mass. 82, 85–86; *Franklin Foundation* v. *Attorney Gen.* 340 Mass. 197, 203–204; *Anna Jaques Hosp.* v. *Attorney Gen.* 341 Mass. 179; Restatement 2d: Conflict of Laws (Tent. Draft No. 5, Apr. 24, 1959) § 298. We are concerned, however, with the construction of a testamentary trust of movables in matters not relating to its administration. The rules of construction at the testator's domicil should be applied in such matters, in the absence of indication that the testator intended some other law to be applied or adopted an instrument drafted under the principles of some other law. See *McCurdy* v. *McCallum,* 186 Mass. 464, 468; *Brandeis* v. *Atkins,* 204 Mass. 471, 474–476; *Phelps* v. *Mattoon,* 310 Mass. 97, 99–100; *Neu England Trust Co.* v. *Wood,* 326 Mass. 239, 242–243; Restatement 2d: Conflict of Laws (Tent. Draft No. 5, Apr. 24, 1959) §§ 299a, 308, and see §§ 295, 306. See also *Krell* v. *Codman,* 154 Mass. 454, 457; *Hutchins* v. *Browne,* 253 Mass. 55, 57–59; *Boston Safe Deposit & Trust Co.* v. *Alfred Univ.* 339 Mass. 82, 85–86, 87; Beale, Conflict of Laws, §§ 251.2,

308.1; Leflar, Conflict of Laws, § 188; Stumberg, Conflict of Laws (2d ed.) pp. 419–426. Cf. *Amerige* v. *Attorney Gen.* 324 Mass. 648, 657-660; Goodrich, Conflict of Laws (3d ed.) § 112. Although this trust had Massachusetts aspects, we find no indication that the testatrix affirmatively intended that the substantive provisions of her will should be construed in accordance with Massachusetts rules. Accordingly, we are remitted to the Maryland law.

3. If we were interpreting the will of a person whose domicil was in Massachusetts, "heirs at law" would mean heirs at law determined at the death of the testatrix "unless a contrary intention appears." *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531. *New England Trust Co.* v. *Watson,* 330 Mass. 265, 267. See also *Old Colony Trust Co.* v. *Tufts,* 341 Mass. 280, 283. Cf. *Taylor* v. *Albree,* 317 Mass. 57, 62–65; *Boston Safe Deposit & Trust Co.* v. *Northey,* 335 Mass. 201, 205–206. It is contended, however, that certain cases in Maryland point to a different rule where, as here, there is (a) a contingent remainder gift to a person or a class, and also (b) an alternative contingent remainder gift to a class, in the event that the first remainder gift does not take effect. In such cases some older Maryland decisions have determined the members of the class taking the alternative gift as of the time of the failure of the first remainder gift. See *Demill* v. *Reid,* 71 Md. 175, 191, decided in 1889, and *Schapiro* v. *Howard,* 113 Md. 360, decided in 1910. See also *Larmour* v. *Rich,* 71 Md. 369, 383–384; *Cowman* v. *Classen,* 156 Md. 428, 446; *Ross* v. *Safe Deposit & Trust Co.* 168 Md. 65, 73–74.

In *Demill* v. *Reid,* an obscure and confusing decision, the court held (at p. 191) that "where there is an ultimate limitation upon a contingency to a class of persons plainly described, and there are persons answering the description in esse when the contingency happens, they alone can take." In the *Schapiro* case, the testator left the residue of his estate to his wife for life (at p. 363) "and in the event of my . . . wife having any . . . children at . . . her death, I . . . devise . . . said estate to said . . . chil-

dren . . . . But in the event of my . . . wife dying without issue living, then and in that case I devise . . . all said estate to my heirs at law." The court interpreted (p. 374) the words "any . . . children" as including any children of the wife by a later marriage, a possibility which would not expire until her death. "Having reached that conclusion," said the court, "it must of necessity follow, that the remainder . . . to the heirs of the testator could not vest until the death" of the wife. The court went on to say (at p. 374) "that the limitations . . . to the children of . . . [the wife] and to the heirs of the testator are contingent. They are alternative contingent remainders, dependent upon a contingency with a double aspect." It then decided (see p. 376) that at the wife's death the remainder to the testator's heirs at law vested in "the sole representative of that class, in esse."

The rule of *Demill* v. *Reid* has been severely criticized. See Reno, Alienability and Transmissibility of Future Interests in Maryland, 2 Md. L. Rev. 89, 116–118; Reno, Further Developments as to the Alienability and Transmissibility of Future Interests in Maryland, 15 Md. L. Rev. 193, 211–220; annotation, 9 Md. L. Rev. 367, 374. Powell, Real Property, § 375, at p. 223, says of the *Demill* rule that "no satisfactory independent rationale for it has been discovered." At least in its application to "heirs at law," as in the *Schapiro* case, the rule postponing the determination of the members of the class seems to run counter to the general rule stated in Restatement: Property, § 308 (but see comment k). See also Restatement: Property, § 261, comment a; Powell, Real Property, §§ 372, 375; Am. Law of Property, § 22.60, at pp. 434–435, 441–447. Cf. Simes & Smith, Future Interests (2d ed.) § 734.

The rule has not been applied to remainder gifts to named or immediately ascertainable remaindermen. When it has been possible to find that specific persons were in fact intended to be remaindermen, the Maryland court has not regarded the doctrine as controlling. See e.g. *Boulden* v. *Dean,* 167 Md. 101, 103, 105–107; *Grace* v. *Thompson,* 169

Md. 653, 658, 667; *Hammond* v. *Piper,* 185 Md. 314, 318; *Chism* v. *Reese,* 190 Md. 311, 319, 323; *Estate of Snyder,* 195 Md. 81, 86–88, 90–92; *Clayton's Trust Estate,* 195 Md. 622, 625; *Johnson* v. *Swann,* 211 Md. 207, 212–213.

The *Demill* rule, in recent years, has now been clearly recognized as being one of construction and not a binding rule of law. See *Boynton* v. *Barton,* 192 Md. 582, 588–592. See also Professor Reno's second article, *supra* (15 Md. L. Rev. 193, 219–220). Cf. Carter, Recent Developments relating to Devolution and Descent of Future Interests in Maryland, 11 Md. L. Rev. 187, 213–220, esp. at p. 217. The rule has been described as "predicated on the intention of the testator to make a gift to 'a body of persons uncertain in number at the time of the gift, to be ascertained at a future date.' Without such an intention, there is no class and . . . *Demill* v. *Reid* . . . is irrelevant." See *Evans* v. *Safe Deposit & Trust Co.* 190 Md. 332, 340. As a rule of construction, the *Demill* rule, of course, will yield to any stronger contrary indication of the testatrix's intention and, in any event, should be applied only if that intention cannot be ascertained. By contrast to this modern view, it seems to us that the court which decided the *Schapiro* case (113 Md. 360, 374) regarded the *Demill* rule as an absolute rule of law, rather than as a rule of construction.

The *Demill* rule is not the only rule of construction to be considered here. Maryland, like Massachusetts, generally recognizes the principle favoring early vesting. See *Hans* v. *Safe Deposit & Trust Co.* 178 Md. 52, 62; *Robinson* v. *Mercantile Trust Co.* 180 Md. 336, 341; *Black* v. *Gary,* 199 Md. 354, 361. The *Schapiro* case, 113 Md. 360, 374 (see Restatement: Property, § 278; Powell, Real Property, § 350; Am. Law of Property, §§ 4.30, 4.36), establishes that we have here alternative contingent remainders, so that any technical vesting of either equitable remainder cannot take place until the time arrives when it is possible to determine which alternative applies. Unless, however, the *Demill* rule must invariably be applied where there are alternative contingent remainders, this does not necessarily mean that

the remaindermen under the second alternative may not be determined finally at an earlier date, so that they would take transmissible interests, of the type sometimes improperly referred to (see *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 467) as "a 'vested' . . . interest in a contingent remainder." Maryland recognizes this type of transmissible interest in contingent remainders to ascertained individuals. See e.g. *Hammond* v. *Piper,* 185 Md. 314, 319. See also *Chism* v. *Reese,* 190 Md. 311, 320. In the sense of acquisition of such a transmissible interest, there seems, in a case like this one, room for application of a principle closely analogous to that favoring early vesting, supported by some of the same reasons mentioned in the *Robinson* case, 180 Md. 336, 341. It is not certain, however, how much weight the Maryland court gives to this analogous principle, although it seems to have helped the court to determine that remainders were given to identifiable persons, rather than to a class, in *Chism* v. *Reese,* 190 Md. 311, 319, 322. See discussion in *Boynton* v. *Barton,* 192 Md. 582, 591 ("[t]he most important rule of construction on the question when an estate was intended to vest is that the law favors the earliest vesting of estates").

The cases already cited indicate to us that the Maryland court in recent years has made substantial effort to avoid application of the *Demill* rule, by finding that particular instruments gave transmissible contingent interests to persons definitely ascertainable, even though described in terms which might suggest a class gift. See Professor Reno's second article, *supra,* 15 Md. L. Rev. 193, 216. There are substantial indications that eventually the *Demill* rule may be wholly disregarded or abandoned. It cannot now be said, however, in view of *Evans* v. *Safe Deposit & Trust Co.* 190 Md. 332, 339–340, that the rule no longer exists. See also *Holton Trust,* 169 Md. 640, 645–646. In the *Evans* case, the court disclaimed having theretofore overruled the *Demill* case, although (at p. 340) it did say, "the result in that [the *Demill*] case has seldom been reached in subsequent cases." In *Boynton* v. *Barton,* 192

Md. 582, 590, the court carefully pointed out that in the *Evans* case it had been "unnecessary to decide whether the deed . . . did make a class gift . . . as the case was decided upon other grounds."

The parties have presented to us a question of interpretation of somewhat conflicting decisions of a court of last resort of a sister State. We cannot predict what treatment the Maryland court will give to the *Demill* rule when next confronted with its application. As the Maryland decisions now stand, we feel constrained to deal with the *Demill* rule in the same way that the Maryland court seems to do, that is to treat it as still existing despite the indications in the *Chism, Evans,* and *Boynton* cases that there has been a very real shift away from it, at least of emphasis, since the *Demill* and the *Schapiro* cases were decided. The Maryland court (in considering the application of the *Demill* rule) now appears to give weight (although it is not clear how much) to conflicting considerations analogous to the rule favoring early vesting, and to apply the *Demill* rule principally in cases (see the language of *Chism v. Reese,* 190 Md. 311, 322) where some testamentary language or background circumstance also points to determination of class membership at a future time. It seems to seize on small indications of actual intention to reach the conclusion that identifiable persons, rather than members of a class, were intended as remaindermen.

We have already said that the general indications as to the testatrix's actual intention[3] in using the term "my heirs at law" reveal at most her principal interest in her daughters and their possible issue and a relatively slight interest in her collateral relatives. It is true also that in 1892, and at any time thereafter until her death, the testatrix's heirs,

---

[3] The use, probably fortuitous, of the words "to divide," "to be paid," and "shall go" in the various contingent remainder gifts seems to us of no help in determining that the testatrix intended that her "heirs at law" were to be determined at her surviving daughter's death. Also, in the absence of proof that the will was drawn by a Massachusetts lawyer, not likely to be familiar with the *Demill* rule, the Massachusetts aspects of the trust hardly provide indication that the testatrix intended the words "heirs at law" to have their usual Massachusetts meaning.

if she had then died, would have been her three daughters.[4] They thus were the persons she would have been most likely to think of as her heirs. If, however, they had all predeceased her, other persons would have been the testatrix's heirs. Accordingly, in the circumstances, we are not persuaded that the testatrix actually intended the term "my heirs at law" to mean her three daughters in effect as named individuals. We are confronted with a situation where there are no reliable indications whatsoever of actual intention.

We are thus thrown back wholly on rules of construction. The *Demill* rule seems to us the most clearly applicable rule of construction. It is more directly relevant than the rule favoring early vesting which is pertinent by analogy in determining whether a contingent remainder is transmissible. The *Demill* rule was applied to closely similar facts in the *Schapiro* case (113 Md. 360). Although that case is a relatively old one, and despite the substantial change in emphasis since it was decided, the more recent Maryland cases do not give us adequate basis for disregarding that decision.

4. The final decree is reversed. A new final decree is to be entered directing the trustee to distribute to the heirs at law of the testatrix determined as of May 4, 1958, in accordance with the then existing laws of Maryland, the balance of the trust fund (after paying the charitable gift of $10,000, if that has not already been paid) together with all income accrued after May 4, 1958. Costs and expenses of these appeals are to be in the discretion of the Probate Court.

*So ordered.*

---

[4] It seems unimportant that the contingent remainder would take effect only upon the complete failure of the testatrix's own issue and after the death of all of her daughters, each of whom had a life estate in the trust property. The Maryland cases do not appear to have given much consideration to the factors discussed in Restatement: Property, § 308, comment k, Powell, Real Property, § 375, pp. 225–233, Am. Law of Property, § 22.60, and annotation 30 A. L. R. 2d 393, 429 et seq. See *Weller* v. *Kolb*, 128 Md. 221, 223. Cf. *Safe Deposit & Trust Co.* v. *Carey*, 127 Md. 593, 596–597 (where stress was laid on particular language); Howard, Remainders "From and After" Life Estates in Maryland, 8 Md. L. Rev. 269, 278.