B. M. C. Durfee Trust Company, trustee, *vs.*
L. Woodward Franzheim & others.

Bristol.    May 5, 1965. — June 9, 1965.

Present: Wilkins, C.J., Whittemore, Cutter, & Reardon, JJ.

*Devise and Legacy,* Per stirpes or per capita, Issue, Remainder, Time of vesting, General rules of construction.  *Conflict of Laws.  Jurisdiction,* Trust.  *Equity Jurisdiction,* Instructions.  *Words,* "To and among."

The construction of language governing the distribution of the property of a trust in the will of one who died domiciled in another State was

governed by the law of that State in the absence of any indication of a contrary intent on the part of the testator, even if the will provided for administration of the trust in Massachusetts.   [338]

Respecting the will of one who died domiciled in Rhode Island, directing termination of a trust upon the death of the last survivor of the life beneficiaries, who were the testator's widow and children, and distribution of the trust property to the issue of the children "per capita and not per stirpes," or, in default of such issue at that time, which occurred, "in equal shares to and among the issue of" two sisters of the testator, with a gift over if there were then no issue of the sisters, it was held in the circumstances that the issue of the sisters should be determined as of the termination of the trust; that the distribution to the sisters' issue should be per stirpes; and that the original stocks for the purpose of such distribution should be the sisters' children rather than the sisters themselves.   [339, 341, 342]

Resort must be had to rules of construction in determining the intent of a testator respecting provisions of his will left ambiguous by ordinary methods of interpretation of his language.   [340]

PETITION for instructions filed in the Probate Court for the county of Bristol on March 30, 1964.

The case was reported by *Mullaney, J.*

*Remsen M. Kinne, III,* stated the case.

*James D. St. Clair (Raymond B. Roberts* with him) for L. Woodward Franzheim, Jr., & others.

*Samuel Adams (Endicott Smith & John J. McCarthy* with him) for Hannah Young & others.

*Jay T. McCamic,* of Virginia, for L. Woodward Franzheim.

*Roy M. Robinson (Nicholas U. Sommerfeld* with him) for Louise W. Franzheim.

*Erastus H. Hewitt* for L. Woodward Young & others.

CUTTER, J.   Solomon Woodward by his will, dated July 25, 1922, left the residue of his substantial estate in trust to pay $45,000 each year "in equal shares to and among my wife . . . my daughter, Ruth . . . and my son, Philip . . . during their respective . . . lives." Upon the death of any of these life beneficiaries leaving issue, such issue were to take "in equal shares" the deceased beneficiary's share of the annual sum of $45,000.   In the event of the death of a beneficiary leaving no issue, the surviving beneficiary or beneficiaries, or their issue, were to take the deceased bene-

ficiary's share. The testator then made the provisions for a final distribution set out in the margin.[1]

The testator died in 1926. His domicil was in Rhode Island, and his will was admitted to original probate there. Because there was real estate in Massachusetts, the will was admitted to ancillary probate here. The trust assets have been at all times personal property. The testator's widow, son, and daughter were living at his death.[2] The trust terminated (see language following [A] in fn. 1) at the death of the son on January 21, 1964. "[A]t no time material were there any issue of either . . . the . . . son or daughter." It thus becomes necessary to apply the provision following [C] in fn. 1.

At the death of the testator's son in 1964, both sisters of the testator were dead. In the Franzheim line, two nephews of the testator were alive (although one of these has since died). One nephew had previously died without leaving issue. Each then living nephew then had living children and grandchildren. In the Irwin line, one grandson of Mrs. Irwin was then living. He had four living children. That grandson's two brothers were then both dead, but each such brother left surviving at the termination of

---

[1] These provisions read in part, "[A] Upon the death of the last survivor of my . . . [the testator's] wife and two children, then the trust . . . shall terminate and the trust funds shall be paid over and distributed, free of all trusts . . . in equal shares to the issue of my said daughter and son, [B] taking per capita and not per stirpes.

"[C] If no issue of my said children survives the termination of said trust, the trust funds shall be paid over in equal shares to and among the issue of my sister, Jessie F. Franzheim and my sister, Hannah . . . Irwin. [D] If there *then* be no surviving issue of my said sisters, then said trust . . . shall be divided and paid over to such person or persons who would then take in case of the distribution of my personal property . . . intestate at the date of the termination of said trust according to the laws of . . . Rhode Island" (emphasis supplied). The letters in brackets are inserted for convenient reference to the language immediately following each letter.

[2] In 1922 when the will was executed the testator's daughter was thirty-seven and his son was twenty-five years old. One of the testator's sisters, Mrs. Franzheim, was then sixty-four with three children between the ages of twenty-five and twenty-nine. The other sister, Mrs. Irwin, was then seventy-two and had a daughter fifty-two and three grandchildren between the ages of eight and twenty-two. At the testator's death in 1926, Mrs. Franzheim had three grandchildren.

the trust two children. One such deceased brother had a then surviving grandchild.[3]

The trustee filed a petition for instructions concerning the distribution. The facts stated above were stipulated. The probate judge reserved and reported the case, without decision, for the determination of this court.

1. The will is to be construed (in matters not relating to administration) in accordance with the law of Rhode Island, the testator's domicil. See *Second Bank–State St. Trust Co.* v. *Weston*, 342 Mass. 630, 635; *Moore* v. *Cannon*, 347 Mass. 594, 597; Restatement 2d: Conflict of Laws (Tent. draft No. 13, revised by Professor Austin W. Scott, April 12, 1965), § 1001, comments e and f. Nothing leads us to conclude that the testator intended that the will be construed in accordance with Massachusetts law.[4] That he intended Rhode Island law to apply is strongly suggested by the provision for application of the Rhode Island intestacy laws in the distribution if there are no "surviving issue of my said sisters" (see sentence following point [D], fn. 1).

---

[3] The situation at the termination of the trust in 1964 was:

THE FRANZHEIM LINE

*Generation*

1 — [Jessie F. Franzheim, the testator's sister, — dead]

2 — L. Woodward Franzheim* [William Franzheim — Harry C. Franzheim*
                              dead without issue]      (since deceased)

3 —   Child A     Child B     Child C                 Child A     Child B

4 — 3 children  4 children  3 children         1 child     3 children

THE IRWIN LINE

1 —           [Hannah B. Irwin, testator's sister, — dead]

2 —              [Mary Irwin Young — dead]

3 — [Child A — dead]     [Child B — dead]     Child C *

4 —  Two children*      Two children*     Four children

5 — One grandchild

* Persons who (or whose estate) now take a share in the trust fund.

[4] Rhode Island decisions concerning the applicable rules of construction seem generally consistent with the Massachusetts cases. The circumstances do not warrant placing special significance upon the fact that a Massachusetts (rather than a Rhode Island) lawyer drew the will. By designating a Massachusetts trust company as trustee, the testator indicated that he expected the trust be administered in Massachusetts. See *Second Bank–State St. Trust Co.* v. *Weston*, 342 Mass. 630, 635; Restatement 2d: Conflict of Laws (Tent. draft No. 13, April 12, 1965) § 1004, comment d. The trustee has qualified here. This proceeding may be maintained in Massachusetts. See *Boston Safe Deposit & Trust Co.* v. *Alfred Univ.* 339 Mass. 82, 85; Restatement 2d: Conflict of Laws, *supra*, § 1000, comment a. Counsel have appeared in this proceeding for all persons in interest.

2. It is far from clear (a) whether the testator desired the issue[5] of his two sisters to take the trust fund on a per capita or a per stirpes basis, and (b) if a per stirpes basis was intended, whether the testator's sisters or the members of some later generation of their issue were to constitute the original stocks for the purposes of the final distribution of the trust fund.

If at the termination of the trust there had been then living issue of the testator, we assume that all his issue then living would have shared on a per capita basis because of the explicit language (following [B] in fn. 1) to that effect. See *Welch* v. *Phinney,* 337 Mass. 594, 597–598 (but see *Rhode Island Hosp. Trust Co.* v. *Hopkins, supra,* fn. 5). No such explicit language appears in the final gift (see language following [C] in fn. 1). The absence of such an explicit provision in one place and its presence in the other suggests that a different result was intended.

The testator has shown that he wishes a per capita distribution among his own issue, but this is not conclusive. The gift made by the second quoted paragraph (fn. 1) is not to the testator's own issue but to the issue of others, and a testator may well intend a disposition of gifts to the issue of others different from that intended with respect to gifts to his own issue. See Simes and Smith, Future Interests (2d ed.) § 744, p. 232. In the circumstances, we attach no weight to the use of the words "to and among." Cf. *Dodge* v. *Slate,* 71 R. I. 191, 196–197. Nothing in this

---

[5] The will leaves it uncertain as of what date the issue of Mrs. Franzheim and Mrs. Irwin were to be determined. On the date of the will, termination of the trust seemed likely to be in the distant future. See *Rhode Island Hosp. Trust Co.* v. *Hopkins,* 93 R. I. 173, 178–179. Two contingencies affected whether any issue of these two sisters would take in possession and enjoyment, viz. (a) whether any issue of any of the life beneficiaries (the testator's widow and two children) would be living at the trust's termination, and (b) whether issue of the two sisters would be then living. See the language following [D] in fn. 1. Although slightly different language and context (see *Old Colony Trust Co.* v. *Tufts,* 341 Mass. 280, 283) might have led us to a different result, we construe the imprecise language as intended to make a gift to the issue of the two sisters living at the trust's termination, despite the constructional preference (see *Rhode Island Hosp. Trust Co.* v. *Thomas,* 73 R. I. 277, 287) for early vesting. See *Rhode Island Hosp. Trust Co.* v. *Hopkins, supra.* Cf. *Watson* v. *Goldthwaite,* 345 Mass. 29, 34–35.

will shows clearly that the draftsman's use of the terms
"to" and "to and among" was deliberate or intended to
have special significance. The gift is in the same para-
graph (see paragraph following [C] in fn. 1) with a gift
(see sentence following [D] in fn. 1) to take effect "[i]f
there then be no surviving issue of" the testator's sisters.
This, because of the reference to the Rhode Island statutes
governing intestate succession, suggests that a per stirpes
distribution was intended.

We conclude that ordinary interpretation methods leave
the will ambiguous. Accordingly, we turn to the Rhode
Island rules of construction for guidance.

The Rhode Island constructional preference now seems
to be for a per stirpes distribution.[6] See *Kelaghan* v.
*Lewis,*    R. I.    ,    ,   —   ,[7] which holds "that, *in the
absence of a clear intention to the contrary,* a gift over to
the issue of someone other than the life tenant will result in
a per stirpes distribution of the gift" (emphasis supplied).[8]
The italicized words aptly describe the present case, where
there is "absence of . . . [any] clear intention" one way
or the other.

The *Kelaghan* case was decided only in 1964. Its result,
however, had been foreshadowed to some extent by earlier
Rhode Island decisions. See *Guild* v. *Allen,* 28 R. I. 430,
436–437; *Rhode Island Hosp. Trust Co. v. Bridgham,* 42
R. I. 161, 169–174 (giving weight in disregarding the earlier
and contrary decision in *Pearce* v. *Rickard,* 18 R. I. 142, to
the statute now G. L. [R. I.] § 33–6–9); *Rhode Island Hosp.
Trust Co. v. FitzGerald,* 49 R. I. 319, 323. See *New Eng-
land Trust Co. v. McAleer,* 344 Mass. 107, 112–113. See

---

[6] This means, of course, that members of younger generations will not com-
pete with living parents or grandparents; see *Evarts* v. *Davis,* 348 Mass.
487, 489–490.

[7] 204 Atl. 2d 633, 634, 636–637.

[8] The court there construed a gift of what remained after a life interest in
the testatrix's husband reading, "All the . . . remainder to be divided equally
among the issue of Mary T. and S. Fay Isaacs [husband and wife], if any
such be living at the decease of my . . . husband." There were living at
the husband's death three children and various grandchildren, by blood or
adoption (whose parents or adoptive parents were still living), of Mary T.
and S. Fay Isaacs.

also *B. M. C. Durfee Trust Co.* v. *Borden,* 329 Mass. 461, 463 (where grandchildren of the lineal ancestors named in a gift to issue were not permitted to take in competition with their living parents). Cf. *Dodge* v. *Slate,* 71 R. I. 191, 197, where the gift was "to my heirs now living, share and share alike. In the event that any of my heirs now living shall not survive me, then . . . the shares of those deceased shall be distributed equally among the heirs surviving me." This was held to require a per capita distribution. Cf. also *Perry* v. *Brown,* 34 R. I. 203, 226–228; *Oulton* v. *Kidder,* 128 Atl. 674, 675–676 (R. I.); *Boston Safe Deposit & Trust Co.* v. *Doolan,* 307 Mass. 233, 238–239; *Agricultural Natl. Bank* v. *Schwartz,* 325 Mass. 443, 445–449. Although the earlier Rhode Island decisions permitted finding, in the facts of a particular case, a basis for a per capita distribution, their trend seems to have been in the direction now stated in the *Kelaghan* case. Guided by that decision, and despite some language in *Dodge* v. *Slate, supra,* which may suggest a contrary result, we hold that the present distribution is to be per stirpes, at least to the extent that grandchildren and more remote descendants of the testator's sisters will not be permitted to take any share in competition with their lineal ancestors living at the termination of the trust. Such persons can take only by right of representation of a deceased ancestor.

3. No Rhode Island decision appears to be a decisive guide to whether the original stocks for the purposes of this distribution are (a) the testator's sisters (Mrs. Franzheim and Mrs. Irwin) or (b) their children (i. e. [see fn. 3] L. Woodward Franzheim, Harry C. Franzheim, and Mary Irwin Young). The rules governing distribution of a gift similar to, or comparable with, that now before us are not uniform and may be affected by particular language read in the light of the attendant circumstances. See Simes and Smith, Future Interests (2d ed.) § 742; Powell, Real Property, § 370; Page, Wills (Bowe-Parker rev. ed.) §§ 36.6, 36.10, 36.15–36.17; Am. Law of Property, §§ 22.14, 22.36 (and see also § 21.13). See also Restatement: Property, §§ 304, 311 (1).

The rules of the Restatement sections just cited, taken with the Rhode Island statutes governing descent and distribution (G. L. [R. I. 1956], §§ 33–1–1, 33–1–7, and 33–1–10, as amended through P. L. 1957, c. 155, § 2) give some basis for the contention that the testator's sisters themselves should be treated as the original stocks for the purposes of the division. See *Dexter* v. *Dexter,* 4 Mason, 302, 306 (1st Cir. R. I.); *Dodge* v. *Slate,* 71 R. I. 191, 194. See also *Branch* v. *DeWolf,* 38 R. I. 395, 403–409. The gift, however, was to the sisters' issue. Read in the light of the circumstance that the testator's sisters, when the will was executed, were of an age at which neither of them was likely to have further issue, we think it more probable that the testator's ambiguous provision was intended to designate his sister's children whom he knew (or at least such of them as died leaving issue) as the original stocks for the purposes of such division.

We regard as distinguishable the more complete provisions dealt with in *Bradlee* v. *Converse,* 318 Mass. 117, 118–120 (where the will contained explicit language in effect directing a division per stirpes "with equality among the stirpes," and where this court decided that the stocks could be found "among the ancestors of the takers instead of among the takers themselves"; see note, 25 B. U. L. Rev. 299). The present case seems to us (in respect of determining whether the sisters or their issue were to constitute the original stocks) more like *B. M. C. Durfee Trust Co.* v. *Borden,* 329 Mass. 461, 462.

4. Accordingly (see fn. 3), one third of the trust fund is to be distributed to L. Woodward Franzheim, one third of the trust fund is to be distributed to the executrix of the will of Harry C. Franzheim, and the remaining one third of the trust fund is to be distributed among the issue of Mary Irwin Young, as follows: viz. one ninth of the trust fund to her son, L. Woodward Young; and one eighteenth of the trust fund each to Philip W. Young and Ann Y. Lewis (children, now over twenty-one, of Irving Penn Young) and to Mary Dana Young and to Francis Penn

Young (minors, children of Francis W. Young, who appear now to be under the guardianship of Anneta T. Young).

A decree in accordance with the foregoing scheme of distribution is to be entered in the Probate Court. Costs and expenses in this court and in the Probate Court are to be in the discretion of the Probate Court.

*So ordered.*